Filed 3/1/17; pub. order 3/21/17 (see end of opn.)
Opinion on transfer from the Supreme Court; Reposted to attach publication order

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAZMINA GERARD et al., | |
| Plaintiffs and Appellants, | G048039 |
| v. | (Super. Ct. No. 30-2008-00096591) |
| ORANGE COAST MEMORIAL MEDICAL CENTER, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment and an order of the Superior Court of Orange County, Nancy Wieben Stock, Judge. Affirmed. Requests for judicial notice. Granted.

Law Offices of Mark Yablonovich and Mark Yablonovich; Capstone Law, Glenn A. Danas and Robert K. Friedl for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Derek R. Havel, Daniel J. McQueen, Robert J. Stumpf, Jr., and Karin Dougan Vogel for Defendant and Respondent.

Seyfarth Shaw, Jeffrey A. Berman, James M. Harris and Kiran A. Seldon for California Hospital Association as Amicus Curiae on behalf of Defendant and Respondent.

## INTRODUCTION

Three health care workers sued their hospital employer in this putative class and private attorney general enforcement action for alleged Labor Code violations and related claims. In this appeal, their primary complaint is the hospital illegally allowed its health care employees to waive their second meal periods on shifts longer than 12 hours.

A statute requires two meal periods for shifts longer than 12 hours. But an order of the Industrial Welfare Commission (IWC) authorizes employees in the health care industry to waive one of those two required meal periods on shifts longer than 8 hours. The principal issue before us concerns the validity of the IWC order.

This is our second opinion in this case. Our first opinion concluded the IWC order is partially invalid to the extent it authorizes second meal break waivers on shifts over 12 hours and we reversed. (*Gerard v. Orange Coast Memorial Medical Center* (2015) 234 Cal.App.4th 285, review granted May 20, 2015, S225205 (*Gerard I*))

After the California Supreme Court granted the hospital's petition for review in *Gerard I*, that court transferred the case back to this court with directions to vacate our decision and to reconsider the cause in light of the enactment of Statutes 2015, chapter 506 (Sen. Bill No. 327 (2015-2016 Reg. Sess.); SB 327).

Upon reconsideration we conclude the IWC order is valid and affirm.

## PLEADINGS AND PROCEDURAL HISTORY

Plaintiffs and appellants Jazmina Gerard, Kristiane McElroy, and Jeffery Carl (plaintiffs) are health care workers who were formerly employed by defendant and respondent Orange Coast Memorial Medical Center (hospital). Gerard, McElroy, and Carl alleged they usually worked 12-hour shifts, but from time to time worked shifts longer than 12 hours.

A hospital policy allowed health care employees who worked shifts longer than 10 hours caring for patients to voluntarily waive one of their two meal periods, even if their shifts lasted more than 12 hours. Plaintiffs alleged they signed second meal period waivers, and they occasionally worked shifts longer than 12 hours without being provided a second meal period.

Plaintiffs' complaint alleged second meal period waiver and other Labor Code violations, and sought penalties, unpaid wages, and injunctive relief. Gerard alleged claims on her own behalf, and on behalf of others as a private attorney general action (Lab. Code, § 2698, et seq.; PAGA). McElroy and Carl also alleged claims on their own behalf, and on behalf of others as a class action (Code Civ. Proc., § 382).

As relevant here, the meal period cause of action alleged: "51. . . . Plaintiffs and other class members who were scheduled to work for a period of time in excess of twelve (12) hours were required to work for periods longer than ten (10) hours, without a second uninterrupted meal period of not less than thirty (30) minutes. [¶] . . . [¶] 54. Defendant's conduct violates the applicable IWC Wage Orders and California Labor Code sections 226.7 and 512[, subdivision] (a)."

Hospital answered and asserted as an affirmative defense, "Plaintiffs' claim for an alleged failure to provide meal periods fails because Defendant utilized valid meal period waivers." Hospital then moved for summary judgment against Gerard on all of her individual and PAGA claims. The motion asserted in relevant part, "There is no disputed issue of material fact as to Plaintiff's first cause of action for meal period violations because Plaintiff was provided meal periods as required by law."

The court granted summary judgment finding, "There is no disputed issue of material fact as to Plaintiff's first cause of action for meal period violations because Plaintiff was provided meal periods as required by law." The court found Gerard's illegal meal period waiver argument was "incorrect per *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*)." Gerard appealed the judgment.

3

Hospital next moved to deny class certification and to strike the class allegations. The court granted the motion and stated: "One of the most basic requirements for class certification is . . . a prima facie claim. . . . Here, the proposed Representative Plaintiffs have failed to show that they have any claim against Defendant. . . ." McElroy and Carl appealed the order.

## LABOR CODE PROVISIONS, IWC ORDERS AND SB 327

Labor Code section 512 (all statutory references are to this code unless otherwise indicated) and IWC wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050; Wage Order No. 5) prescribe meal periods. Employers who fail to provide these meal periods must pay premium wages. (§ 226.7, subd. (c); Wage Order No. 5, § 11(B).)

Section 512 was adopted in 1999 and became effective on January 1, 2000. (Assem. Bill No. 60 (1999-2000 Reg. Sess.) § 6; AB 60.) Subdivision (a) of section 512 (section 512(a)) states in relevant part: "An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, *except that if the total hours worked is no more than 12 hours, the second meal period may be waived* by mutual consent of the employer and the employee only if the first meal period was not waived." (Italics added.)

Wage Order No. 5 was adopted on June 30, 2000 and became effective on October 1, 2000. Section 11(D) of Wage Order No. 5 (section 11(D)) states: "Notwithstanding any other provision of this order, *employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to one of their two meal periods*." (Italics added.)

On the date section 11(D) was *adopted* as part of Wage Order No. 5, section 516 stated: "*Notwithstanding any other provision of law*, the [IWC] may *adopt* or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers." (AB 60, § 10; italics added.)

4

After section 11(D) was adopted, but before it became *effective*, section 516 was amended to say: "*Except as provided in Section 512*, the [IWC] may *adopt* or amend working condition orders with respect to break periods, [and] meal periods . . . . " (Sen. Bill No. 88 (1999-2000 Reg. Sess.) § 4, eff. Sept. 19, 2000; italics added; SB 88.)

After we decided *Gerard I*, section 516 was further amended by SB 327. The language quoted in the preceding paragraph was unchanged but labeled separately as subdivision (a), and a new subdivision (b) was added which stated: "Notwithstanding subdivision (a), or any other law, including Section 512, the health care employee meal period waiver provisions in Section 11(D) of [IWC] Wage Orders 4 and 5 were valid and enforceable on and after October 1, 2000, and continue to be valid and enforceable. This subdivision is declarative of, and clarifies, existing law."[1]  (SB 327, § 2.)

SB 327 also contained legislative findings and declarations which stated:

"SECTION 1. The Legislature finds and declares the following:

"(a) From 1993 through 2000, [IWC] Wage Orders 4 and 5 contained special meal period waiver rules for employees in the health care industry. Employees were allowed to waive voluntarily one of the two meal periods on shifts exceeding 12 hours. On June 30, 2000, the [IWC] adopted regulations allowing those rules to continue in place. Since that time, employees in the health care industry and their employers have relied on those rules to allow employees to waive voluntarily one of their two meal periods on shifts exceeding 12 hours.

"(b) Given the uncertainty caused by a recent appellate court decision, *Gerard v. Orange Coast Memorial Medical Center* (2015) 234 Cal.App.4th 285, without immediate clarification, hospitals will alter scheduling practices.

"[¶] . . . [¶]

---

[1]  For clarity all subsequent references to section 516 will include the new subdivision designations, and subdivision (a) will be referred to as section 516(a).

"SEC. 3. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

"In order to confirm and clarify the law applicable to meal period waivers for employees in the health care industry throughout the state, it is necessary that this act take effect immediately." (SB 327, §§ 1, 3.)

## DISCUSSION

In *Gerard I* we held section 11(D) invalid to the extent it sanctions second meal period waivers for health care employees who work shifts of more than 12 hours, because it conflicts with section 512(a) which allows such waivers only if the total hours worked is no more than 12 hours. Moreover, we held the IWC exceeded its authority by enacting section 11(D), because it created an additional exception for health care workers, beyond the second meal period waiver exception in section 512(a), all in violation of section 516(a). For these reasons, we concluded hospital's second meal period waiver policy violates sections 512(a) and 516(a) and is invalid.

Upon reconsideration, it appears we erred in *Gerard I*. The lynchpin of our analysis was the conclusion that section 11(D) conflicts with section 512(a). However, in reaching this conclusion we failed to account for a subtle but critical distinction in administrative law—the date an agency regulation or order is *adopted* is not the same as the date it becomes *effective*. (Compare Gov. Code, § 11346, et seq. ["Procedure for *Adoption* of Regulations"] with Gov. Code, § 11343.4, subd. (a) [adopted regulations filed with Secretary of State "become *effective*" in accordance with prescribed schedule] (italics added); also compare § 1173 [authorizing the IWC to "*adopt* an order"] with § 1184 [adopted order "shall be *effective* . . . not less than 60 days from the date of publication"] italics added.) Long-settled case law validates the distinction between the adoption date and the effective date. (See, e.g., *Ross v. Bd. of Retirement of Alameda County Employees' Retirement Assn.* (1949) 92 Cal.App.2d 188, 193.)

6

In this case, as the supplemental amicus curiae brief points out, the SB 88 amendment to section 516(a) took away the IWC's authority to *adopt* wage orders inconsistent with the second meal period requirements of section 512(a) as of September 19, 2000. But the IWC had already adopted section 11(D) on June 30, 2000, under the AB 60 version of section 516(a) which authorized the IWC to do so "notwithstanding" section 512(a). Thus, the SB 88 amended version of section 516(a) should have been irrelevant to our analysis in *Gerard I*. Instead, it became dispositive. We concluded section 11(D) is subject to the SB 88 amended version of section 516(a). It isn't.

In short, section 11(D) is valid—not invalid. It was specifically authorized by the AB 60 version of section 516(a) in effect on the date it was adopted, even though it conflicts with section 512(a) to the extent it sanctions second meal period waivers for health care employees on shifts of more than 12 hours. (See also § 517, subd. (a) [IWC shall adopt by July 1, 2000, "wage, hours, and working conditions orders consistent with this chapter . . . ."]) Therefore, the IWC did not exceed its authority by adopting section 11(D), and hospital's second meal period waiver policy does not violate section 512(a).

SB 327 reinforces our conclusion section 11(D) is valid. When the Legislature clarifies a statute in response to an appellate court opinion construing it, we must consider whether the clarification applies in the pending case. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 (*Western Security*).) As our Supreme Court explained: "A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so. . . . [¶] A corollary to [this rule] is that a statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning." (*Ibid.*)

7

"One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation: "'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." [Citation.]' [Citation.]" (*Western Security*, *supra*, 15 Cal.4th at pp. 243-244.)

"Even so, a legislative declaration of an existing statute's meaning is neither binding nor conclusive in construing the statute. Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts. . . . Nevertheless, the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them." (*Western Security*, *supra*, 15 Cal.4th at p. 244.)

Applying these principles here, it is apparent SB 327 merely clarified rather than changed the meaning of sections 512(a) and 516(a). Our opinion in *Gerard I* concerned a novel question of statutory interpretation. No prior published opinion had considered the validity of section 11(D) in relation to sections 512(a) and 516(a). SB 327 was enacted soon after *Gerard I*, and in direct response to the controversy our opinion created regarding the validity of section 11(D).

In addition, the Legislature made plain its intent in enacting SB 327. Again section 2 of SB 327 added section 516(b) which states: "Notwithstanding subdivision (a), or any other law, including Section 512, the *health care employee meal period waiver provisions in Section 11(D) of* [IWC] *Wage Orders 4 and 5 were valid and enforceable on and after October 1, 2000, and continue to be valid and enforceable*. This subdivision is declarative of, and *clarifies*, *existing law*." (Italics added.)

8

The Legislature similarly expressed its intent in section 1 of SB 327 which states, in part: "(b) *Given the uncertainty caused by a recent appellate court decision, Gerard v. Orange Coast Memorial Medical Center* (2015) 234 Cal.App.4th 285, *without immediate clarification*, hospitals will alter scheduling practices." (Italics added.)

Finally, the Legislature's intent was evident in its statement of the facts justifying enactment of SB 327 as an urgency measure: "The facts constituting the necessity are: *In order to confirm and clarify the law applicable to meal period waivers for employees in the health care industry* throughout the state, it is necessary that this act take effect immediately." (SB 327, § 3; italics added.)

In sum, the Legislature's unmistakable focus in SB 327 was the disruptive effect of our opinion in *Gerard I* on the longstanding and widespread use of second meal period waivers by employees and employers in the health care industry. "By abrogating [our] decision, the Legislature intended to protect those parties' expectations and restore certainty and stability to those transactions." (*Western Security*, *supra*, 15 Cal.4th at pp. 245-246.) And the obvious import of SB 327 is the Legislature intended its provisions to apply immediately to existing second meal period waivers, including those at issue here.

Plaintiffs argue SB 327 changed the law, rather than clarified it, because: "The expressed intent of the Legislature in enacting [SB 88], which amended section 516[(a)] in 2000, was to clarify that under section 516[(a)] the IWC *never had* the authority to adopt wage orders inconsistent with section 512[(a)]. Thus, [SB 88] did not *change* the law; it stated what the law had always been." We are not persuaded.

SB 88 definitely changed the law. Before SB 88, the IWC had unlimited authority under section 516(a) to adopt wage orders like section 11(D), notwithstanding any other provision of law, including section 512(a). (AB 60, § 10.) After SB 88, the IWC had no authority under section 516(a) to adopt wage orders like section 11(D) which are inconsistent with section 512(a). (SB 88, § 4.) And again, section 11(D) is subject to the AB 60 version of section 516(a), not the SB 88 amended version of section 516(a).

9

Further, nothing in the legislative history of SB 88 suggests the Legislature intended to invalidate wage orders like section 11(D), which were adopted under the AB 60 version of section 516(a) before July 1, 2000 as required by section 517. But even if the Legislature had that intent when it enacted SB 88, as plaintiffs argue against SB 327: "The Legislature is powerless to change [the] history [of section 516(a)]. More to the point, its declaration in SB [88] and section 516[(a)] as amended by SB [88], is ineffective to *legislate* what the effect of section 516[(a)] *was* prior to the amendment."

Lastly, the cases cited by plaintiffs do not support their contention SB 88 merely clarified the law. *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429 and *Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560 both analyzed wage orders the IWC adopted after SB 88 became effective, not before. *Brinker* did say SB 88 was, "intended to prohibit the IWC from amending its wage orders in ways that 'conflict[] with [the] 30-minute meal period requirements' in section 512[(a)]. [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1043.) *Brinker* did not say SB 88 was intended to prohibit the IWC from adopting such wage orders before SB 88 became effective.

For all of these reasons, we hold SB 327 represents a clarification of the law before our decision in *Gerard I*, consistent with our reconsidered view above, rather than a change in the law. Consequently, we accept SB 327 as the """"legislative declaration of the meaning"""" of sections 512(a) and 516(a), and "give the Legislature's action its intended effect." (*Western Security*, *supra*, 15 Cal.4th at pp. 243, 246)

As a result, the second meal period waivers signed by plaintiffs in this case, "were valid and enforceable on and after October 1, 2000, and continue to be valid and enforceable." (§ 516, subd. (b).) Accordingly, we conclude the court did not err by granting summary judgment, denying class certification and striking the class allegations.

This conclusion moots plaintiffs' contention the court erroneously sustained hospital's "'failure to authenticate'" objection to the timecards and wage statements Gerard offered in opposition to the motion for summary judgment.

10

## DISPOSITION

The summary judgment and the order denying class certification and striking the class allegations are affirmed. The requests for judicial notice are granted in part.[2] In the interests of justice each party shall bear their own costs on appeal.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

---

[2] Hospital's requests for judicial notice filed July 18, 2014 and August 28, 2014 granted in *Gerard I* are granted again. Hospital's supplemental request for judicial notice filed September 2, 2016 is granted as to exhibits 2 (excluding the letter also separately identified as exhibit 3), 5 and 6 to the declaration of Gail Blanchard-Sager, and denied in all other respects. Amicus curiae California Hospital Association's request for judicial notice filed December 2, 2016 was granted by separate order on January 12, 2017 as to exhibits A through D to the declaration of Kiran A. Seldon, but denied as to exhibit E.

11

Filed 3/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAZMINA GERARD et al., | |
| Plaintiffs and Appellants, | G048039 |
| v. | (Super. Ct. No. 30-2008-00096591) |
| ORANGE COAST MEMORIAL MEDICAL CENTER, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

Seyfarth Shaw requested that our unpublished opinion, filed on March 1, 2017, be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).  The request for publication is GRANTED.  The opinion is ordered published in the Official Reports.

THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.