Reposted to provide correct counsel listing.

# IN THE SUPREME COURT OF CALIFORNIA

JAZMINA GERARD et al.,
Plaintiffs and Appellants,

v.

ORANGE COAST MEMORIAL MEDICAL CENTER,
Defendant and Respondent.

S241655

Fourth Appellate District, Division Three
G048039

Orange County Superior Court
30-2008-00096591

December 10, 2018

Justice Liu authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, Kruger, and Siggins[*] concurred.

---

[*]     Presiding Justice of the Court of Appeal, First Appellate District, Division Three assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

GERARD v. ORANGE COAST MEMORIAL MEDICAL CENTER

S241655

Opinion of the Court by Liu, J.

The Labor Code generally provides that employees who work more than five hours must be provided with a 30-minute meal period and that employees who work more than 10 hours must be provided with an additional 30-minute meal period. (Lab. Code, § 512, subd. (a); all undesignated statutory references are to this code.) An employee who works no more than six hours may waive the meal period, and an employee who works no more than 12 hours may waive the second meal period. (*Ibid.*) A wage order of the Industrial Welfare Commission (IWC) permits health care employees to waive the second meal period even if they have worked more than 12 hours. The hospital that is the defendant in this case allowed employees working shifts longer than 12 hours to waive the second meal period, and the employees who are the plaintiffs here waived their second meal periods. Plaintiffs now claim that the IWC order permitting them to waive second meal periods for shifts greater than 12 hours violates the Labor Code and that the hospital must pay back wages and penalties for unlawfully permitting waiver of the second meal period. Considering the relevant statutory and regulatory provisions in light of their history, we agree with the Court of Appeal that the IWC order does not violate the Labor Code.

## I.

Plaintiffs Jazmina Gerard, Kristiane McElroy, and Jeffrey Carl are health care workers who were formerly employed by defendant Orange Coast Memorial Medical Center (Hospital). According to their complaint, plaintiffs usually worked 12-hour shifts and sometimes worked shifts longer than 12 hours. A Hospital policy allowed health care employees who worked shifts longer than 10 hours caring for patients to voluntarily waive one of their two meal periods, even if their shifts lasted more than 12 hours. Plaintiffs alleged they signed second meal period waivers and occasionally worked shifts longer than 12 hours without being provided a second meal period. Plaintiffs contended that these second meal period waivers violated the Labor Code, and they sought penalties, unpaid wages, and injunctive relief for those and other violations. Gerard alleged claims on her own behalf and on behalf of others in the form of a private attorney general action. (Lab. Code, § 2698, et seq. (Labor Code Private Attorneys General Act of 2004 or PAGA).) McElroy and Carl also alleged claims on their own behalf and on behalf of others in the form of a class action. (Code Civ. Proc., § 382.)

The Hospital asserted as an affirmative defense that the meal period waivers had conformed to the applicable IWC wage order. The Hospital moved for summary judgment against Gerard on all of her individual and PAGA claims, asserting that there was no disputed issue of material fact as to the cause of action for meal period violations because the plaintiffs were provided meal periods as required by law. The trial court granted the Hospital's motion for summary judgment and its subsequent motion to deny class certification. Plaintiffs appealed.

As explained in greater detail below, the Court of Appeal initially reversed the trial court, holding that although the meal period waivers were obtained in conformity with the applicable wage order, that wage order violated a provision of the Labor Code generally prohibiting second meal period waivers for employees working shifts longer than 12 hours. We granted the Hospital's petition for review and transferred the case to the Court of Appeal with directions to consider recently enacted legislation that was potentially pertinent to the case. The Court of Appeal subsequently reversed course and affirmed the trial court's rulings in favor of the Hospital. We then granted plaintiffs' petition for review.

## II

Wage and hour claims, including claims regarding the availability and timing of meal breaks, are "governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).) "To the extent a wage order and a statute overlap, we will seek to harmonize them, as we would with any two statutes." (*Id.* at p. 1027.) But because the Legislature is the source of the IWC's authority, a provision of the Labor Code will prevail over a wage order if there is a conflict. (See *id.* at p. 1026; *California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 207–209.)

In June 1993, at the urging of the health care industry, the IWC amended Wage Order 5–1989 to add subdivision 11(C), which permitted health care employees who worked shifts longer than eight hours to waive a second meal period.

3

(Official Notice, Amends. to §§ 2, 3, & 11 of IWC Order No. 5–89 (June 30, 1993).) As the IWC's Statement as to the Basis of Amendments explained: "The petitioner requested the IWC to allow employees in the health care industry who work shifts in excess of eight (8) total hours in a workday to waive their right to 'any' meal period . . . as long as certain protective conditions were met. The vast majority of employees testifying at public hearings supported the IWC's proposal with respect to such a waiver, but only insofar as waiving 'a' meal period or 'one' meal period, not 'any' meal period. Since the waiver of one meal period allows employees freedom of choice combined with the protection of at least one meal period on a long shift, on June 29, 1993, the IWC adopted language which permits employees to waive a second meal period provided the waiver is documented in a written agreement voluntarily signed by both the employee and the employer, and the waiver is revocable by the employee at any time by providing the employer at least one day's notice." (*Ibid.*)

In 1999, the Legislature enacted Assembly Bill No. 60 (AB 60), known as the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. This bill was passed in response to IWC wage orders that had eliminated overtime for employees working more than eight hours per day. The legislation repealed five wage orders, including Wage Order No. 5 covering the health care industry, and required the IWC to review its wage orders and readopt orders restoring daily overtime. (See *Brinker, supra*, 53 Cal.4th at p. 1045.) The Legislature amended Labor Code section 510 to explicitly provide that "[a]ny work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an

4

employee." (Stats. 1999, ch. 134, § 4; compare stats. 1982, ch. 185, § 1 [earlier version of section 510 without that provision].) Section 511 was added to allow employers and employees to agree on an alternative workweek that permitted employees to work up to 10 hours per day within a 40-hour week without the obligation to pay overtime. AB 60 also added section 512, which for the first time set out statutory meal period requirements. (*Brinker*, at p. 1045.) Subdivision (a) of section 512 (section 512(a)) states in relevant part: "An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, *except that if the total hours worked is no more than 12 hours, the second meal period may be waived* by mutual consent of the employer and the employee only if the first meal period was not waived." (Italics added.)

Further, AB 60 added section 516, which stated: "*Notwithstanding any other provision of law*, the [IWC] may adopt or amend working condition orders with respect to break periods, *meal periods*, and days of rest for any workers in California consistent with the health and welfare of those workers." (Stats. 1999, ch. 134, § 10, italics added.) And AB 60 added section 517, which states in pertinent part in subdivision (a): "The Industrial Welfare Commission shall, at a public hearing to be concluded by July 1, 2000, adopt wage, hours, and working conditions orders consistent with this chapter without convening wage boards, which orders shall be final and conclusive for all purposes."

Consistent with that mandate, the IWC adopted a new version of Wage Order No. 5 on June 30, 2000, and it became effective on October 1, 2000. Section 11(D) of Wage Order No.

5

5 essentially readopted former section 11(C) discussed above: "Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to one of their two meal periods."

After section 11(D) was adopted, but before it became effective, the Legislature enacted Senate Bill No. 88 (SB 88), which among other things expanded the class of employees exempt from overtime to include certain computer software and nursing professionals. (See §§ 515, subd. (f), 515.5; Stats. 2000, ch. 492, §§ 2–3.) SB 88 also amended section 516 to say: "*Except as provided in Section 512*, the [IWC] may adopt or amend working condition orders with respect to break periods [and] meal periods . . . ." (Stats. 2000, ch. 492, § 4, italics added.)

The present litigation challenged the validity of section 11(D), and the Court of Appeal invalidated the provision in *Gerard v. Orange Coast Memorial Medical Center* (2015) 234 Cal.App.4th 285, review granted May 20, 2015, S225205 (*Gerard I*). As the Court of Appeal here explained: "In *Gerard I* we held . . . section 11(D) invalid to the extent it sanctions second meal period waivers for health care employees who work shifts of more than 12 hours, because it conflicts with section 512(a) which allows such waivers only if the total hours worked is no more than 12 hours. Moreover, we held the IWC exceeded its authority by enacting . . . section 11(D), because it created an additional exception for health care workers, beyond the second meal period waiver exception in section 512(a), all in violation of section 516(a). For these reasons, we concluded hospital's second meal period waiver policy violates sections 512(a) and 516(a) and is invalid." (*Gerard v. Orange*

6

*Coast Memorial Medical Center* (2017) 9 Cal.App.5th 1204, 1210 (*Gerard II*).)

After *Gerard I*, the Legislature further amended section 516 with Senate Bill No. 327 (SB 327). The previous language requiring the IWC to conform to section 512 was retained but labeled as subdivision (a), and a new subdivision (b) was added, stating: "Notwithstanding subdivision (a), or any other law, including Section 512, the health care employee meal period waiver provisions in Section 11(D) of [IWC] Wage Orders 4 and 5 were valid and enforceable on and after October 1, 2000, and continue to be valid and enforceable. This subdivision is declarative of, and clarifies, existing law." (Stats. 2015, ch. 506, § 2.)

SB 327 also stated as legislative findings: "The Legislature finds and declares the following: [¶] (a) From 1993 through 2000, [IWC] Wage Orders 4 and 5 contained special meal period waiver rules for employees in the health care industry. Employees were allowed to waive voluntarily one of the two meal periods on shifts exceeding 12 hours. On June 30, 2000, the [IWC] adopted regulations allowing those rules to continue in place. Since that time, employees in the health care industry and their employers have relied on those rules to allow employees to waive voluntarily one of their two meal periods on shifts exceeding 12 hours. [¶] (b) Given the uncertainty caused by a recent appellate court decision, *Gerard v. Orange Coast Memorial Medical Center* (2015) 234 Cal.App.4th 285, without immediate clarification, hospitals will alter scheduling practices." (Stats. 2015, ch. 506, § 1.)

SB 327 also contained an urgency provision: "This act is an urgency statute necessary for the immediate preservation of

7

the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect.  The facts constituting the necessity are:  [¶] In order to confirm and clarify the law applicable to meal period waivers for employees in the health care industry throughout the state, it is necessary that this act take effect immediately."  (Stats. 2015, ch. 506, § 3.)

SB 327 was supported not only by hospitals and healthcare organizations but also by health care employee unions.  The United Nurses Association of California/Union of Health Care Professionals (UNAC) stated:  "Under this wage order provision, UNAC members have for years enjoyed the flexibility of alternate work schedules, which allows for greater staffing flexibility and better patient care.  Patient outcomes are dramatically improved in environments where the nurses and other health care professionals can place priority on the needs of their patients without interruption by an arbitrary meal period when the shift runs long.  (RNs are generally able to eat during work time in break rooms.)"  (Assem. Com. on Labor & Employment, Bill Analysis of Sen. Bill No. 327 (2015–2016 Reg.Sess.) Sept. 8, 2015, p. 8.)  UNAC commented that "[*Gerard I*] will result in a severe disruption of the lives of our members, many of whom have built a schedule of work, child care, and other obligations around the ability to waive a second meal period."  (*Ibid.*)

At the same time as the Legislature was acting, the Hospital petitioned this court to review *Gerard I*, supported by amici letters from UNAC and Service Employees International Union Local 121RN.  We granted the petition and transferred the cause to the Court of Appeal with directions to vacate the

8

decision and to reconsider the cause in light of the enactment of SB 327.

On remand, the Court of Appeal concluded it had erred in *Gerard I*: "The lynchpin of our analysis was the conclusion that . . . section 11(D) conflicts with section 512(a). However, in reaching this conclusion we failed to account for a subtle but critical distinction in administrative law—the date an agency regulation or order is *adopted* is not the same as the date it becomes *effective*. (Compare Gov. Code, § 11346, et seq. ['Procedure for *Adoption* of Regulations' . . . ] with Gov. Code, § 11343.4, subd. (a) [adopted regulations filed with Secretary of State 'become *effective*' in accordance with prescribed schedule] . . . ; also compare § 1173 [authorizing the IWC to '*adopt* an order'] with § 1184 [adopted order 'shall be *effective* . . . not less than 60 days from the date of publication'] . . . .) Long-settled case law validates the distinction between the adoption date and the effective date. (See, e.g., *Ross v. Bd. of Retirement of Alameda County Employees' Retirement Assn.* (1949) 92 Cal.App.2d 188, 193.)

"In this case, . . . the [SB] 88 amendment to section 516(a) took away the IWC's authority to *adopt* wage orders inconsistent with the second meal period requirements of section 512(a) as of September 19, 2000. But the IWC had already adopted . . . section 11(D) on June 30, 2000, under the [AB] 60 version of section 516(a) which authorized the IWC to do so 'notwithstanding' section 512(a). Thus, the [SB] 88 amended version of section 516(a) should have been irrelevant to our analysis in *Gerard I*. Instead, it became dispositive. We concluded . . . section 11(D) is subject to the [SB] 88 amended version of section 516(a). It isn't." (*Gerard II, supra*, 9 Cal.App.5th at pp. 1210–1211.) The court therefore concluded

9

that "the IWC did not exceed its authority by adopting . . . section 11(D), and hospital's second meal period waiver policy does not violate section 512(a)." (*Id.* at p. 1211.)

To summarize this chronology:  The IWC in 1993 amended Wage Order 5 with section 11(C), allowing health care employees who work more than eight hours in a shift to waive a second meal period.  In 1999, AB 60 provided in Labor Code section 512 that employees could only waive the second meal period if they worked 12 hours or less, but also provided in former section 516 that the IWC could adopt or amend wage orders with respect to meal periods "notwithstanding any other provision of law" as long as the order was consistent with the health and welfare of the employees.  In 2000, the IWC adopted section 11(D), which, like 11(C), permitted health care workers who work more than eight hours to waive a second meal period.  Also in 2000, after section 11(D) was adopted but before it went into effect, the Legislature enacted SB 88, which required IWC wage orders to be consistent with section 512.  Eight years later, this litigation challenged the validity of the second meal period waivers of health care employees working shifts greater than 12 hours.  In *Gerard I*, the Court of Appeal held that such waivers are invalid because section 11(D) violated sections 512 and 516.  In response, the Legislature enacted SB 327, declaring the meal waiver provisions for health care employees in Wage Order No. 5 valid and enforceable.  We granted the Hospital's petition for review and transferred the case to the Court of Appeal.  The Court of Appeal in *Gerard II* reversed itself, and we granted Gerard's petition for review.

10

## III.

Plaintiffs do not dispute the distinction between the adoption of a wage order and its effective date, or that the amended version of section 516 does not apply to wage orders that had already been adopted. Indeed, the text of amended section 516 qualifies the IWC's authority to adopt wage orders going forward, but it contains no terms invalidating wage orders already adopted: "Except as provided in Section 512, the [IWC] *may adopt or amend* working condition orders with respect to break periods [and] meal periods . . . ." (Stats. 2000, ch. 492, § 4, italics added.) But plaintiffs contend that the IWC lacked authority to adopt section 11(D) because even under the version of section 516 in effect at the time the wage order was adopted, section 512(a) limited the IWC's authority to permit meal period waivers.

Plaintiffs' argument is based principally on section 517's language that IWC wage orders adopted by July 1, 2000, must be "consistent with this chapter," that is, consistent with the provisions of AB 60. (Stats. 1999, ch. 134, § 11.) " '[C]onsistent with this chapter,' " plaintiffs contend, "included a requirement that the IWC wage order be consistent with section 512 from the moment the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 was enacted. Section 516 specifically granted the IWC authority to adopt wage orders related to meal periods, but did not grant authority to disregard the minimum standards established in the Act in section 512." Plaintiffs construe the phrase "notwithstanding any other provision of law" in former section 516 narrowly: "The correct reading is that the IWC was authorized to adopt orders as to break periods and meal periods even if another law limited

11

IWC's authority to adopt such orders, not that the IWC could disregard *all* existing law in exercising its authority."

This reading of the statutory language is unpersuasive. It ignores the broad sweep of the phrase "notwithstanding any other provision of law." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 983, italics omitted [describing "notwithstanding any other provision of law" as a " ' "term of art" ' [citation] that declares the legislative intent to override all contrary law"].) We need not define the outermost parameters of the phrase in order to conclude that there is no reason to read it in former section 516 to exclude from its scope the law regarding meal periods found in section 512(a). The two provisions were adopted simultaneously as part of the same legislation and in order to further a common purpose. Moreover, at the time the IWC adopted the disputed wage order, the phrase "consistent with this chapter" in section 517 meant consistency not only with section 512(a) but also with former section 516, which by its terms authorized the IWC to make rules about meal periods "notwithstanding any other provision of law."

The more natural way to reconcile the phrases "notwithstanding any other provision of law" of former section 516 and "consistent with this chapter" in section 517 is to give them their literal meaning. The main purpose of AB 60, the Eight Hour Day Restoration Workplace Flexibility Act of 1999, was to restore overtime for a nonexempt employee working more than eight hours a day. "[C]onsistent with this chapter" means that IWC orders going forward can no longer disregard daily overtime. But even as AB 60 limited the discretion of the IWC in that and other respects, it explicitly retained in former section 516 the IWC's rulemaking prerogative, "notwithstanding any other provision of law," with respect to

12

"break periods, meal periods and days of rest," limited only by a requirement that any rules be "consistent with the health and welfare" of affected workers. (Stats. 1999, ch. 134, § 10.)

Read literally, the "notwithstanding" phrase undoubtedly gives broad powers to the IWC. That literal reading makes sense in this context. The Legislature's broad delegation to the IWC is consistent with its recognition that the IWC is constitutionally authorized (Cal. Const., art. XIV, § 1), and has been long understood to have the power, to adopt rules nearly co-equal to legislative enactments. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1026–1027.) Only after section 11(D) was adopted did the Legislature, through SB 88, further limit the IWC's discretion by requiring any rules about meal periods to be consistent with section 512. Accordingly, we reject Gerard's statutory argument and the related argument that section 11(D) was beyond the scope of the authority that the Legislature conferred on the IWC. (See *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 321.)

Plaintiffs cite *Brinker* and a Court of Appeal case for the proposition that the IWC may not exercise its authority under section 516 in ways that contravene section 512. (*Brinker*, *supra*, 53 Cal.4th at p. 1043; *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 438.) But those cases concern the meaning of section 516 *after* SB 88 went into effect, not the meaning of former section 516.

Plaintiffs also cite the legislative history of SB 88. The Senate Third Reading analysis of SB 88 states: "This bill clarifies two provisions of the Labor Code enacted in Chapter 134. Labor Code Section 512 codifies the duty of an employer to provide employees with meal periods. Labor Code section

13

516 establishes the authority of IWC to adopt or amend working condition orders with respect to break periods, meal periods, and days of rest. This bill provides that IWC's authority to adopt or amend orders under Section 516 must be consistent with the specific provisions of Labor Code Section 512." (Sen. Com. on Lab. & Employment, Sen. 3d Reading of Sen. Bill 88 (1999–2000 Reg. Sess.) as amended Aug. 10, 2000, p. 5.) According to plaintiffs, the word "clarifies" means that amended section 516 merely declared existing law and that it was never the Legislature's intent to authorize the IWC to permit meal period waivers other than as provided in section 512.

Whether an amendment represents a change in the law or merely a declaration of existing law is a question of interpreting existing law, a task that ultimately belongs to the judiciary. (*McClung v. Employment Dev. Dept.* (2004) 34 Cal.4th 467, 472–474.) A legislative statement that a statute declares or amends existing law is not binding on courts, which must make their own determination. (*Id.* at pp. 473–476; see *Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 690.) In this case, it is clear that SB 88's amendment of former section 516 worked a change in the law. Before the amendment, the IWC had the authority to adopt orders concerning meal periods "notwithstanding any other provision of law," including section 512. After the amendment, the IWC could no longer deviate from the meal period requirements of section 512. (See *Brinker, supra,* 53 Cal.4th at pp. 1042–1043.)

Moreover, although SB 88 was an urgency statute, there is no indication that the reason for the urgency was to prevent section 11(D) from going into effect. The restriction on the IWC's authority with respect to meal period waivers was only

one part of SB 88; the bill also addressed, among other things, the exemption of certain computer software professionals and a certain class of certified nurse midwives, nurse anesthetists, and nurse practitioners from overtime pay. (Stats. 2000, ch. 492, §§ 2–3.) The stated reason for the urgency legislation was to enact these exemptions: "In order, at the earliest possible time, to protect businesses that rely on the computer industry as well as certain vital health care professions, it is necessary for this act to take effect immediately." (*Id.*, § 5.)

Plaintiffs also invoke the principle that wage orders and statutes should be harmonized where possible. (See *Brinker*, *supra*, 53 Cal.4th at p. 1027.) They propose to harmonize the wage order and statute as follows: Section 512 authorizes second meal period waivers for shifts up to 12 hours, whereas wage order No. 5 authorizes waivers of second meal periods for shifts over 8 hours but says nothing explicitly about shifts over 12 hours. The way to harmonize these two provisions, they say, is to read the wage order as only authorizing waivers for shifts of 8 to 12 hours. We find this interpretation unpersuasive. The language of former section 516 ("Notwithstanding any other provision of law, the Industrial Welfare Commission may adopt . . . .") already dictates the relationship between the wage order and the statutory scheme, directing that the order take precedence. We decline to insert limitations into the wage order where none appear.

The parties argue at length about the significance of SB 327. Plaintiffs point to SB 327's declaration that SB 88's amendment of former section 516 did not intend to countermand the IWC's already adopted wage order. This legislative declaration is not binding on the courts. (See *McClung*, *supra*, 34 Cal.4th at pp. 472–473.) Nevertheless, for

15

reasons discussed above, we independently conclude that SB 88 did not undo section 11(D) of Wage Order No. 5 permitting health care workers who work more than eight hours to waive a second meal period. The Legislature, when it enacted SB 88, did not second-guess the IWC's determination that allowing health care employees to waive a second meal period is consistent with promoting their health and welfare.

Since 2000, the Legislature has amended section 512 several times to exempt various classes of employees covered by collective bargaining agreements from the prohibition against the waiver of second meal periods for employees working more than 12 hours. These include certain classes of bakery workers (Stats. 2003, ch. 207 (A.B.330), § 1), motion picture or broadcast employees (Stats. 2005, ch. 414 (A.B.1734), § 1), and certain construction employees, commercial drivers, security officers, and utility employees (Stats. 2010, ch. 662 (A.B.569), § 1). Thus, although the Legislature has determined that waiver of a second meal period for employees working more than eight hours is generally contrary to public policy, it has not applied that rule inflexibly to all categories of employees. This is consistent with our conclusion that the Legislature, in prospectively requiring IWC wage orders to be consistent with section 512(a), did not intend to disturb the extant exemption for health care workers based on the IWC's determination that the exemption promoted the health and welfare of those workers.

**CONCLUSION**

We affirm the judgment of the Court of Appeal.

**LIU, J.**

**We Concur:**
**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**SIGGINS,** **J.**[*]

---

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Three assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Gerard v. Orange Coast Memorial Medical Center

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 9 Cal.App.5th 1204
**Rehearing Granted**

_____

**Opinion No.** S241655
**Date Filed:** December 10, 2018

_____

**Court:** Superior
**County:** Orange
**Judge:** Nancy Wieben Stock

_____

**Counsel:**

Law Offices of Mark Yablonovich, Mark Yablonovich; Capstone Law, Glenn A. Danas, Robert K. Friedl, Arlene M. Turinchak and Ryan H. Wu for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Derek R. Havel, Daniel J. McQueen, Robert J. Stumpf, Jr., and Karin Dougan Vogel for Defendant and Respondent.

Seyfarth Shaw, Jeffrey A. Berman, James M. Harris and Kiran A. Seldon for California Hospital Association as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Ryan H. Wu
Capstone Law
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
(310) 556-4811

Richard J. Simmons
Sheppard, Mullin, Richter & Hampton
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
(213) 620-1780