Filed 6/29/26  Forney v. CHCM CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LAUREN FORNEY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CHCM, INC.,<br><br>    Defendant and Respondent. | G065550<br><br>(Super. Ct. No. 30-2021-01229774)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Shanberg Stafford, Ross E. Shanberg and Shane C. Stafford; Bartz Law Group and Aaron A. Bartz for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, David Fishman, John J. Manier and Janet S. Soultanian for Defendant and Respondent.

\*    \*    \*

Plaintiff Lauren Forney appeals the trial court's order confirming an arbitration award in favor of defendant CHCM, Inc., doing business as College Hospital Costa Mesa (CHCM). Forney also appeals from the court's denial of her motion to vacate the award. She contends the arbitrator exceeded his powers by manifestly disregarding California law and issuing a ruling that conflicted with established California policy.

We disagree and find no actual error. The arbitrator's decision constituted a reasonable interpretation of the relevant law. Accordingly, the trial court's decision to confirm and not vacate the arbitration decision was not error. We affirm the order.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Forney has been a licensed registered nurse since January 2019. In April 2019, she began working as a staff nurse for CHCM. She was later promoted to charge nurse.

When Forney began her employment, she signed an agreement entitled "Employee Agreement to Arbitrate" (Arbitration Agreement or Agreement), which, among other things, acknowledged that she had received and read CHCM's arbitration policy. The Agreement stated it "shall be governed solely by the Federal Arbitration Act" (9 U.S.C. § 1 et seq.) (FAA), and that "[p]rocedural issues shall be governed by the FAA."

During her employment, Forney was classified as a nonexempt employee. Forney left CHCM in 2021.

On November 4, 2021, Forney filed her initial complaint in the trial court. She filed an amended complaint on January 31, 2022 (the complaint) which alleged a single cause of action under the Private Attorneys

2

General Act (Lab. Code, § 2698 et seq.)[1] (PAGA). She alleged violations of the Labor Code, including, as relevant here, meal period violations (§ 512). Forney claimed she and other aggrieved employees were not given the opportunity to take proper meal periods before the end of the fifth hour of work, or to take a second meal period when they worked more than 10 hours a day.

In October 2022, CHCM filed a motion to compel individual arbitration and dismiss claims. The court granted the motion to compel individual arbitration and stayed the remaining claims under PAGA until the arbitration was completed.

Forney submitted an arbitration claim, alleging numerous wage and hour violations. Among other things, Forney alleged that CHCM failed to pay overtime, provide meal periods, provide rest periods, and timely pay wages. She sought unpaid wages and penalties under PAGA, as well as attorney fees and restitution.

Forney testified during the arbitration. After she was hired at CHCM, she attended an orientation during which she was given onboarding documents to review and sign. This was Forney's first job at which she was asked to work shifts of 12 hours, and she asked questions about a document which included a waiver of a second meal period. To her understanding, it was explained that waiving the second meal period would shorten her shift from 12 hours and 30 minutes to 12 hours.

The document Forney signed was called "Agreement to Waive Right to a Second Meal Period." Above the title, "College Hospital Costa Mesa" was printed. The document stated: "I, Lauren Forney of the Nursing

---

[1] Subsequent statutory references are to the Labor Code unless otherwise indicated.

department, request to waive one of the two thirty (30) minute meal periods to which I am entitled on days in which I work ten (10) hours or more but not more than twelve (12) hours. When practicable, my daily thirty (30) minute meal period will be scheduled towards the middle of my shift. [¶] I may revoke this waiver at any time by providing my supervisor with at least one day's written notice. This agreement is entered into freely and voluntarily." Forney's signature appears on the document, as does a blank space for the human resources director.

The arbitration lasted multiple days. After it concluded, the arbitrator, in due course, issued a final award. The arbitrator found in favor of CHCM. With regard to the issues pertinent to this appeal, the arbitrator found that nurses were permitted to waive a meal period during the first five hours of their shift. Forney contended she was only allowed by law to waive a second meal period, but not the first. The arbitrator disagreed, finding the relevant wage order expressly allowed healthcare workers who work more than eight hours per shift to "*voluntarily waive their right to one of their two meal periods*."

The arbitrator also determined Forney's written waiver was enforceable despite the lack of a signature by CHCM. The arbitrator found the printed words "College Hospital Costa Mesa" and "Human Resources Director" were sufficient.

CHCM subsequently filed a petition to confirm the award in the trial court. Forney filed a petition to vacate the award. The court heard the motions on the same date. Following the hearing, the court granted the motion to confirm and denied the motion to vacate. Forney now appeals.

4

DISCUSSION

I.

STATUTORY FRAMEWORK AND STANDARD OF REVIEW

Under the agreement's terms, the Federal Arbitration Act (9 U.S.C. §1 et seq.; FAA) applies to this case. While California courts do not generally apply the FAA's vacatur provisions, "the parties have unambiguously agreed to enforcement of the awards under the Federal Arbitration Act and we enforce their choice of law determination." (*Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234, 247.)

The statutory grounds for vacating an arbitration award under the FAA are narrow and exclusive. (See *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 584–589.) "Factual or legal errors by arbitrators—even clear or gross errors—'do not authorize courts to annul awards.'" (*Gingiss International, Inc. v. Bormet* (7th Cir. 1995) 58 F.3d 328, 333.) Nor is insufficiency of the evidence grounds for overturning an award under the FAA. (*Flexible Manufacturing Systems Pty. Ltd. v. Super Products Corporation* (7th Cir. 1996) 86 F.3d 96, 99–100.)

One provision that permits vacatur of an arbitration award is "where the arbitrators exceeded their powers." (9 U.S.C. § 10(a)(4).) In order to obtain relief under this provision, the appellant "must clear a high hurdle." (*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 671.) "'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable.'" (*Ibid.*)

An arbitrator's decision may be subject to vacatur under this provision if it is ""completely irrational" or "constitutes manifest disregard of

5

the law."'"[2] (*Comedy Club, Inc. v. Improv West Associates* (9th Cir. 2009) 553 F.3d 1277, 1288.) "[F]or an arbitrator's award to be in manifest disregard of the law, '[i]t must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it.'" (*Id.* at p. 1290.)

An arbitrator may also exceed his or her powers if the award is contrary to public policy. (*Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1258, disapproved of on other grounds by *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 117.) This provision is narrow and "limited to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."'" (*United Paperworkers International Union, AFL-CIO v. Misco, Inc.* (1987) 484 U.S. 29, 43.)

"We review *de novo* a district court's decision to confirm or vacate an arbitration award." (*Fidelity Federal Bank, FSB v. Durga Ma Corporation* (9th Cir. 2004) 386 F.3d 1306, 1311.) In doing so, however, we bear in mind the very narrow grounds for challenging the arbitrator's decision.

---

[2] Whether "manifest disregard" is a valid basis for vacatur is a subject of disagreement. It is not of critical importance here. (See *Countrywide Financial Corp. v. Bundy, supra,* 187 Cal.App.4th at pp. 250–253; *Comedy Club, Inc. v. Improv West Associates, supra,* 553 F.3d at pp. 1289–1290.)

## COVERED EMPLOYEES MAY WAIVE ONE OF TWO MEAL PERIODS

Forney contends the arbitrator exceeded his powers and manifestly disregarded the law by finding she was able to waive a "first meal period" when working more than eight hours per day.

Wage and hour laws, including meal breaks, are "governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the [Industrial Welfare Commission (IWC)]." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.)

We begin with the relevant Labor Code provisions. Section 512, subdivision (a), states that "an employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

In sum, an employee who works more than five hours must be provided a 30 minute meal break. Employees who work more than 10 hours must be provided a second meal break. The second meal break may be waived with both parties consent "only if the first meal period was not waived."

Section 516, subdivision (a) permits the IWC to adopt or amend working condition orders "with respect to break periods, meal periods, and

days of rest" except "as provided by Section 512." Accordingly, this section prohibited the IWC from altering the rule that a worker must be given a meal period within the first five hours of work.

In 2015, the Legislature amended section 516. It added a subdivision (b) to take effect immediately. (Stats. 2015, ch. 506, § 2, eff. Oct. 5, 2015.) The new subdivision (b) stated: "Notwithstanding subdivision (a), or any other law, including Section 512, the health care employee meal period waiver provisions in Section 11(D) of Industrial Welfare Commission Wage Orders 4 and 5 were valid and enforceable on and after October 1, 2000, and continue to be valid and enforceable." (§ 516, subd. (b).)

It is IWC's wage order No. 5-2001 (Wage Order No. 5) that is relevant here. It first states the general rule as codified in section 512, subdivision (a). (Wage Order No. 5, § 11(A).) It then modifies that rule for healthcare workers who work shifts longer than eight hours: "Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to *one of their two meal periods.* In order to be valid, any such waiver must be documented in a written agreement that is voluntarily signed by both the employee and the employer. The employee may revoke the waiver at any time by providing the employer at least one day's written notice. The employee shall be fully compensated for all working time, including any on-the-job meal period, while such a waiver is in effect." (Wage Order No. 5, § 11(D), italics added.)

Similar language first appeared in amendments to Wage Order No. 5 from 1993. At that time, covered employees were permitted to "waive their right to *a* meal period." (Wage Order No. 5 (1993) § 11(C), italics added.)

8

The IWC explained its reasoning: "The petitioner requested the IWC to allow employees in the health care industry who work s[h]ifts in excess of eight (8) total hours in a workday to waive their right to 'any' meal period or meal periods as long as certain protective conditions were met. The vast majority of employees testifying at public hearings supported the IWC's proposal with respect to such a waiver, but only insofar as waiving 'a' meal period or 'one' meal period, not 'any' meal period. Since the waiver of one meal period allows employees freedom of choice combined with the protection of at least one meal period on a long shift, on June 29 1993, the IWC adopted language which permits employees waive a second meal period provided the waiver is documented in a written agreement voluntarily signed by both the employee and the employer, and the waiver is revocable by the employee at any time by providing the employer at least one day's notice." (IWC Statement as to the Basis for Wage Order No. 5 (1993) § 11(C); see *Gerard v. Orange Coast Memorial Medical Center* (2018) 6 Cal.5th 443, 448; *Bradsbery v. Vicar Operating, Inc.* (2025) 110 Cal.App.5th 899, 913.)

This language clarifies that the order allows employees to waive "a" or "one" meal period. When the IWC refers to "a second meal period," it is not referring to a meal period after the first one, but "a" second meal period, meaning either of the two. The language was later refined to the current version of "'one of their two meal periods.'" (*Gerard v. Orange Coast Memorial Medical Center, supra,* 6 Cal.5th at p. 449.)

Forney wants us to interpret "a second meal period" to mean the later of two meal periods. But there is simply no law supporting this interpretation. The current version of Wage Order No. 5 is clear on its face, referring to "one of [the employee's] two meal periods." The evolution of the language in the Wage Order, not that we need resort to it when the language

9

itself is clear, also supports this interpretation. The waiver Forney signed mirrors the language of the Wage Order, stating she requested "to waive one of the two" meal periods to which she was entitled. Contrary to Forney's arguments, she properly waived one of her two meal periods, and she offers no authority[3] finding a similar waiver unlawful.

To reach the outcome Forney desires would require us to ignore section 516 and the unequivocal language of the Wage Order itself. The Wage Order is the controlling meal period regulation under section 516, and the arbitrator correctly applied it here. Accordingly, we find the arbitrator did not exceed his authority.

## III.

### THE PRINTED SIGNATURE DOES NOT REQUIRE VACATUR

A waiver of one of an employee's two meal periods "must be documented in a written agreement that is voluntarily signed by both the employee and the employer." (Wage Order No. 5, § 11(D).) Here, the waiver included a printed heading that stated, "College Hospital Costa Mesa" and included a line at the end for "Human Resources Director." It did not include a cursive signature.

The arbitrator found the waiver agreement valid, because "CHCM intended its letterhead and typed position 'Human Resources Director' to authenticate its name as its signature." The arbitrator reasoned the statute of frauds did not apply, and parol evidence may authenticate the letterhead and typed signature line as the hospital's signature. The court

---

[3] Forney relies heavily on *Gerard v. Orange Coast Memorial Medical Center, supra,* 6 Cal.5th 443. But *Gerard* only considered waiver of the "second meal period," and is not authority for a point it did not reach. (*Id.* at pp. 446–447.)

10

considered *Lara v. Onsite Health, Inc.* (N.D. Cal. 2012) 896 F.Supp.2d 831, which considered whether an arbitration agreement was mutual when the employer had not signed it. The arbitrator explained: "The court held the defendant company intended to be bound by the agreement because, inter alia, defendant's 'intent is evidenced by the fact that the Agreement is printed on its company letterhead and, because [defendant] submitted its offer of employment in this manner, . . . [defendant] *intended to authenticate its name as a signature.* . . . [Defendant's] intent to be bound is further evidenced by the fact that it presented the Agreement to [plaintiff] as part of its New Hire packet, with a letter explaining that [plaintiff] must complete and sign all *documents to be processed.* . . . [T]he Court finds that [defendant] intended to be bound by the Agreement *and that its letterhead was intended to authenticate the Agreement.*'"

The arbitrator found the evidence established CHCM intended to authenticate its name as a signature, relying on Forney's testimony that she reviewed and signed new hire documents, including the waiver. She was required to do so in order to work there. As in *Lara,* the evidence of the agreement, signed by Forney at her orientation, indicated CHCM's intent "to authenticate its name as its signature."

Mindful of the standard of review here, we find no basis to overturn the arbitrator's determination that the waiver agreement was valid despite the lack of a written signature by CHCM. As we noted above, "'[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.'" (*Schoenduve Corp. v. Lucent Technologies, Inc.* (9th Cir. 2006) 442 F.3d 727, 731.) While reasonable minds could perhaps differ, the arbitrator's decision is based on a fair

11

interpretation of case law and the relevant facts, and is neither irrational nor demonstrates "'a manifest disregard of the law.'" (*Ibid.*)

Accordingly, we find no error.

DISPOSITION

The order is affirmed. CHCM is entitled to its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


SERVINO, J.