Filed 7/31/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| L'CHAIM HOUSE, INC. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DIVISION OF LABOR STANDARDS ENFORCEMENT, <br><br> Defendant and Respondent. | A152975 <br><br> (Sonoma County <br> Super. Ct. No. SCV-259820) |

Plaintiffs L'Chaim House, Inc. and its owner, Cary Kopstein (collectively, L'Chaim), operate residential care homes for seniors. L'Chaim was cited for wage and hour violations by defendant Division of Labor Standards Enforcement (DLSE). After an unsuccessful administrative appeal, L'Chaim initiated this action by filing a petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5, which the trial court denied.

On appeal, L'Chaim claims that under the applicable Industrial Welfare Commission (IWC) wage order, it may require its employees to work "on-duty" meal periods that, unlike periods when employees are "relieved of all duty," do not need to be at least 30 minutes long. (IWC wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050) (hereafter Wage Order No. 5), subd. (11)(A), (E).) We hold that, to the contrary, L'Chaim must provide meal periods of at least 30 minutes, regardless of whether they are on-duty or off-duty, under Wage Order No. 5 and the applicable statutory law. We therefore affirm.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal presents a pure question of law, we need not discuss the underlying facts in detail. Briefly, in February 2016, the DLSE issued wage and penalty citations to L'Chaim, which operates two 24-hour residential care homes in San Rafael for seniors. The citations were for, among other things, failing to provide 30-minute meal periods under Wage Order No. 5, which governs the public housekeeping industry. A hearing officer affirmed the citations, which included a total of approximately $89,000 in premium-pay and penalty assessments under Labor Code sections 226.7 and 558 for failure to provide 30-minute meal periods to employees.[1]

In December 2016, L'Chaim filed the instant action, challenging only the conclusion that it failed to provide meal periods as required. The following September, the trial court denied the writ petition. It concluded that even though L'Chaim was authorized to provide on-duty, as opposed to off-duty, meal periods to its employees, those meal periods still had to be at least 30 minutes long.

# II.
## DISCUSSION

### A. *The Standard of Review and Governing Law.*

A writ of administrative mandamus may be sought on the basis that the agency engaged in a "prejudicial abuse of discretion. Abuse of discretion is established if the [agency] has not proceeded in the manner required by law." (Code Civ. Proc., § 1094.5, subd. (b).) "Generally, whether an agency has proceeded lawfully is a legal question that the trial court and appellate court both review de novo." (*Stewart Enterprises, Inc. v. City of Oakland* (2016) 248 Cal.App.4th 410, 420.) We agree with the parties that L'Chaim's sole claim—that the on-duty meal breaks authorized by subdivision 11(E) of Wage Order No. 5 do not need to be least 30 minutes long—presents an issue of statutory

---

[1] All further statutory references are to the Labor Code unless otherwise noted.

2

interpretation that we review de novo.  (See *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

"We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose.  [Citation.]  '[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours[,] and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' "  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026–1027 (*Brinker*).)  Similarly, when, as here, "a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply," and the wage order "must be interpreted in the manner that best effectuates [the] . . . intent [to protect workers]."  (*Id.* at p. 1027.)  "To the extent a wage order and a statute overlap, we will seek to harmonize them, as we would with any two statutes."  (*Ibid.*)

Wage Order No. 5, subdivision 11(A) provides, "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.  Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.  An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

Subdivision 11(E) of Wage Order No. 5 creates an exception for "employees of 24 hour residential care facilities for the elderly," which the DLSE concedes applies to L'Chaim's employees.  Under that provision, such employees "may be required to work on-duty meal periods without penalty when necessary to meet regulatory or approved

3

program standards and one of the following two conditions is met: [¶] (1) [¶] (a) The residential care employee[] eats with residents during residents' meals and the employer provides the same meal at no charge to the employee; or [¶] (b) The employee is in sole charge of the resident(s) and, on the day shift, the employer provides a meal at no charge to the employee." (Wage Order No. 5, subd. 11(E).)

In 1999, the Legislature regulated meal periods for the first time by passing section 512, which "made meal periods a statutory as well as a wage order obligation." (*Brinker*, *supra*, 53 Cal.4th at pp. 1036–1037.) Before that, "an employer's meal periods were governed solely by the language of the IWC's wage orders." (*Id.* at p. 1034.) "The declared intent in enacting section 512," which was done in response to the IWC's "weakening of employee protections" in certain wage orders, "was not to revise existing meal period rules but to codify them in part." (*Id.* at pp. 1037–1038.) Under the statute, "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." (§ 512, subd. (a).)[2]

B.    *The On-duty Meal Periods Authorized by Subdivision 11(E) Must Be at Least 30 Minutes Long.*

L'Chaim's claim that it does not have to provide on-duty meal periods that are 30 minutes long rests on a fundamental misreading of subdivision 11 of Wage Order No. 5. As noted above, subdivision 11(A) states that "[u]nless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." L'Chaim interprets this language to "contemplate[] instances where an employee's meal period may be less than 30 minutes," in which case subdivision 11(A) "does not extend the meal period until a full

---

[2] Effective January 1, 2019, the word "shall" was substituted for "may" (Stats. 2018, ch. 48, § 1), but the quoted language has otherwise remained the same since 1999. (See Stats. 1999, ch. 134, § 6; *Brinker*, *supra*, 53 Cal.4th at p. 1037, fn. 16.)

uninterrupted 30 minutes is realized" or "require a tolling of the 30-minute meal period while the employee carries out some of his or her duties." We do not follow this reasoning. If an employee is entitled to an off-duty meal period of 30 minutes, yet work obligations intrude on a portion of that time, the off-duty period is converted to an on-duty period—no matter how small the portion of the period that work intruded upon— and the employee is paid for the entire period. There is no suggestion that once work interrupts an employee's meal period, the period simply ends even if 30 minutes have not yet passed.

Thus, we cannot agree with L'Chaim that the trial court's determination that its employees are entitled to an on-duty meal period of at least 30 minutes equates to an "imputation of a 30-minute uninterrupted meal period into an 'on-duty' meal period." The court's order says no such thing. Instead, it merely concludes that an employee subject to subdivision 11(E) is still entitled to a 30-minute meal period even though that meal period may be on-duty instead of off-duty.

What L'Chaim misunderstands is that an on-duty meal period is not the functional equivalent of no meal period at all. On-duty meal periods are an intermediate category requiring more of employees than off-duty meal periods but less of employees than their normal work. Recognizing this, the trial court stated that even if L'Chaim's employees were not entitled to "an uninterrupted meal period," they "may at least be afforded 30[] minutes of limited duty enabling them to eat their meal in relative peace." L'Chaim attacks the notion that its "employees may be given 'limited duty' while on a meal break" as creating "several absurd consequences." According to L'Chaim, because employees do not clock out for on-duty meal periods, there is no way to track the length of those periods. In addition, "the creation of a new 'limited duty' requirement to [Wage Order No. 5, subdivision 11(E)] would force employers to delineate which tasks an employee is expected to perform during his or her on-duty meal period," which L'Chaim claims "would be difficult and even potentially dangerous for the residents."

But any such practical challenges are inherent in providing "on-duty meal periods" at all, not just periods of a particular length. Moreover, the question presented here is

5

whether an on-duty meal period must be at least 30 minutes long, not how courts might evaluate the adequacy of the period under different factual scenarios. Thus, while we do not address what constitutes an acceptable on-duty meal period in the context of this case, what we can say is that employees of 24-hour residential care facilities for seniors are unambiguously entitled to "on-duty meal periods" under subdivision 11(E). L'Chaim's interpretation would effectively read that requirement out of Wage Order No. 5.

L'Chaim also seizes on broad language in an appellate decision and a DLSE opinion letter that it claims supports its position. In *Palacio v. Jan & Gail's Care Homes, Inc.* (2015) 242 Cal.App.4th 1133 (*Palacio*), the Fifth District Court of Appeal considered the interplay between subdivisions 11(A) and 11(E). Subdivision 11(A) is a general provision that allows employers and employees to agree that meal periods will be on-duty and to revoke these voluntary agreements at any time. (*Palacio*, at p. 1139.) Subdivision 11(E), in contrast, "enables employers to *require* employees to work on-duty meal periods, provided certain conditions are met." (*Ibid.*) The *Palacio* employer required its employees to work on-duty meal periods under subdivision 11(E) and to sign agreements waiving their right to off-duty meal periods. *Palacio* held that the employer "was not obligated to comply with subdivision 11(A)" by including a provision in the agreements giving the employees the right to revoke them. (*Palacio*, at pp. 1140–1141.) Similarly, in an October 17, 2016 opinion letter, the DLSE responded to the question "whether a meal period waiver is required to be signed by employees exempt from duty free meal periods under [subdivision 11(E)]" by reference to *Palacio*. The letter characterized *Palacio* as holding that the right-to-revoke language is not required in such a waiver "because if a care home meets the requirements of [subdivision] 11(E) it does not also need to comply with [subdivision] 11(A)."

L'Chaim argues that the statements in *Palacio* and the DLSE opinion letter establish that an employer whose employees are covered by Wage Order No. 5, subdivision 11(E) are exempt from complying with *any* part of subdivision 11(A), including the requirement that meal periods be at least 30 minutes long. We would have to read these statements wholly divorced from their context to accept L'Chaim's

6

interpretation, and we decline to do so. Subdivision 11(E) creates an exception to subdivision 11(A) by authorizing an employer to mandate on-duty meal periods without the need to reach a revocable waiver agreement with its employees, and *Palacio* addressed only the portion of subdivision 11(A) that subdivision 11(E) purports to affect, the portion governing waivers of off-duty meal periods. (See *Palacio*, *supra*, 242 Cal.App.4th at p. 1139.) It is axiomatic that " 'cases are not authority for propositions not considered.' " (*City of Bellflower v. Cohen* (2016) 245 Cal.App.4th 438, 452.) The only reasonable reading of *Palacio*'s statement is that if a care home meets the requirements of subdivision 11(E) it does not also need to comply with *the portion of subdivision 11(A) governing waivers of off-duty meal periods*, not subdivision 11(A) as a whole.

Finally, even if any doubt remained, we agree with the DLSE that section 512 compels the same conclusion. Under that statute, which L'Chaim does not address in its briefing, an employer is prohibited from "employ[ing] an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes," unless the employee works no more than six hours in a day and agrees to waive the meal period. (§ 512, subd. (a).) Although section 512 contains exceptions for workers in several industries, none of them apply here. And although the IWC has broad authority to "adopt or amend working condition orders with respect to . . . meal periods . . . for any workers in California consistent with the health and welfare of those workers," at all relevant times—including when subdivision 11(E) was added to Wage Order No. 5—that authority has been specifically limited "as provided in Section 512." (§ 516, subd. (a); see *Gerard v. Orange Coast Memorial Medical Center* (2018) 6 Cal.5th 443, 454–455 [post-2000, IWC cannot "deviate from the meal period requirements of section 512"]; Official Notice, Amends. to §§ 3, 11, 12 of Wage Order No. 5 (Oct. 29, 2001).) Thus, absent a waiver, the statute's plain terms required L'Chaim to provide "a meal period"—whether off-duty or on-duty—of at least 30 minutes any time an employee worked at least five hours.

7

## III.
### DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

_____

Humes, P. J.



WE CONCUR:




_____

Margulies, J.




_____

Banke, J.




*L'Chaim House et al. v. Department of Labor Standards Enforcement*  A152975

**CONCURRENCE OF BANKE, J.**

Although I concur in the majority's opinion, I write separately to emphasize what an exceptionally poor vehicle this case is to discuss the parameters of a *lawful* "on-duty" meal period and to underscore the narrowness of our holding.

*First*, the employer never raised, until well after the eleventh hour, any exception to the general rule that employees must be provided unpaid, 30-minute "off-duty" meal periods every five hours.[1] (See *Gerard, supra*, 6 Cal.5th at p. 446 ["Labor Code generally provides that employees who work more than five hours must be provided with a 30-minute meal period"].) The employer raised no exception during the months-long audit, and the citation issued by the Division of Labor Standards Enforcement (DLSE) alleged violations of the general rule, i.e., failing to provide 30-minute "off-duty" meal periods. The employer invoked no exception in response, and instead, requested a hearing. The DLSE then tried the case as one where employees were entitled to, but not provided with, uninterrupted 30-minute "off-duty" meal periods, during which they were free to leave the premises. (See *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1035–1040 (*Brinker*).) The DLSE thus made a well-focused evidentiary presentation that, during the audit period, the employer had no meal period policies at all,

---

[1] DLSE wage order No. 5-2001 (Wage Order No. 5) provides three exceptions. The first, set forth in subdivision (11)(A), applies when "the nature of the work prevents an employee from being relieved of all duty," the employee agrees in writing to "on-the-job" paid meal periods, and the agreement specifies the employee can revoke the agreement at anytime. (See, e.g., *Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926, 942–943 (*Lubin*) [discussing the "nature of the work exception"].) The second exception, set forth in Wage Order No. 5, subdivision (11)(D), applies to health care workers who work longer than an eight-hour shift and allows these employees to "waive" their "right to one of their two meal periods," if they do so in writing and the employee can revoke the waiver on one day's notice. (See, e.g., *Gerard v. Orange Coast Memorial Medical Center* (2018) 6 Cal.5th 443 (*Gerard*) [upholding waiver exception].) The third exception, set forth in Wage Order No. 5, subdivision (11)(E), and the exception at issue here, applies to employees of certain 24 hour residential care facilities, including for seniors, and has a number of requirements as discussed in subsequent paragraphs. (See, e.g., *Palacio v. Jan & Gail's Care Homes, Inc.* (2015) 242 Cal.App.4th 1133, 1138–1141 (*Palacio*) [discussing 24 hour residential care facility exception].)

1

employees did not have uninterrupted half hour meal periods, and employees were not free to leave the premises during meal periods. The employer's defense was *not* that any exception to the general rule applied. Rather, the employer maintained employees could, in fact, take 30-minute "off-duty" meal periods and the fact they did not avail themselves of the opportunity could not, under *Brinker*, subject the employer to liability. Accordingly, the employer focused its evidentiary presentation on trying to undermine the testimony of the two employees who had been called as DLSE witnesses, by calling three other employees who claimed they had ample time to eat and rest, and they could have departed the premises had they desired or needed to do so. In other words, the employer's defense—that, in fact, employees could take uninterrupted 30-minute "off-duty" meal periods—was wholly *in*consistent with the invocation of any exception to the general rule.

It was not until a month after the hearing had concluded and the matter submitted for decision, that the employer first raised the 24 hour residential care facility exception, citing to *Palacio* (which had been decided more than nine months earlier). In a letter to the hearing officer, the employer asked to "re-open[]" the "evidence." After the employer sent a second such letter, the DLSE opposed the request to reopen as being too late and not warranted by the evidence. Given this chronology of events, the DLSE agreed at oral argument the judgment could theoretically be affirmed on the ground of forfeiture.

*Second*, since this case was prosecuted and tried as a straightforward "*Brinker*" case—i.e., that the employees were entitled to, but not provided with, uninterrupted, 30-minute "off-duty" meal periods, during which they were free to leave the premises—and was defended against as such, the employer made no affirmative showing that the 24 hour residential care facility exception applied. (*See Lubin, supra*, 5 Cal.App.5th at p. 943 ["burden is on the employer to plead and prove facts justifying on-duty meal periods"].) Nor did the hearing officer grant the employer's belated request to reopen the hearing to present additional evidence. As a consequence, the evidence does not

2

conclusively establish that this exception even applies, let alone suffice for any discussion about the particulars of a lawful "on-duty" meal period under this exception.

The employer belatedly urged in the administrative proceedings, and has maintained in these administrative mandamus proceedings, that the record establishes the 24 hour residential care facility exception applies because employees could, without charge, eat the same food they prepared for residents and some employees did so. However, this exception has additional substantive requirements, the first of which is that "on-duty" meal periods are "necessary to meet regulatory or approved program standards." (Wage Order No. 5, subd. (11)(E).) This threshold requirement is directly at odds, however, with the defense the employer presented—that employees could, in fact, take uninterrupted, 30-minute "off-duty" meal periods.[2]

The 24 hour residential care facility exception further requires an employer to establish that one of two additional conditions is met. (Wage Order No. 5, subd. (11)(E).) The first condition an employer can choose to meet can, itself, be met in one of two ways: (a) if the "employees [*sic*] eats with residents during residents' meals and the employer provides the same meal at no charge to the employee," or (b) the employee "is in sole charge of the resident(s)" and "on the day shift, the employer provides a meal at no charge to the employee." (*Id.*, subd. (11)(E)(1)(a) & (b).) The second condition an employer can choose to meet is providing employees, "except for the night shift," the "right to have an off-duty meal period" not more than once every two weeks "upon 30 days' notice." (*Id.*, subd. (11)(E)(2).) Because the employer made *no* evidentiary showing as to the applicability of this exception, it did not identify which of these two

---

[2] Although the employer defended on the ground employees could, in fact, take 30-minute "off-duty" meal periods, it did not dispute that only one employee worked the night shift at each of the two small homes (five to six residents) and that the senior residents could not be left unattended—thus, alluding to regulatory controls. That was not the case, however, as to employees on the day shift. At least two employees worked that shift, and often the owner, herself, assisted in the care of residents. The employer therefore maintained these employees could, if they wanted, take an uninterrupted, 30-minute meal period and leave the premises.

3

additional conditions it supposedly met. For example, there is no evidence employees were required to eat with residents during residents' meals, as required by subdivision (11)(E)(1)(a). There is no evidence any employee on the night shift (the only shift where an employee was in "sole charge" of the residents) understood that "on the day shift" that employee would be provided a meal at no charge, as required by subdivision (11)(E)(1)(b). And there is no evidence employees were aware they had the right to an "off-duty" meal period, not more than once every two weeks, with 30 days notice. (*Id.*, subd. (11)(E)(2).) Accordingly, as the DLSE also agreed at oral argument, given the abysmal state of the evidence as to whether the 24 hour residential care facility exception even applies, the judgment could theoretically also be affirmed on this ground.[3]

*Third*, the absence of a developed evidentiary record makes examination of the nature of lawful "on-duty" meal periods under the 24 hour residential care facility exception virtually impossible. We can point to *Brinker* as indicating "on-duty" meal periods must, like "off-duty" meal periods, be 30 minutes in length. (*Brinker, supra*, 53 Cal.4th at p. 1035 ["An on-duty meal period is one in which an employee is not 'relieved of all duty' for the entire 30-minute period."].) But this says next to nothing about the nature of a lawful "on-duty" meal period under any exception to the general rule and, particularly, the 24 hour residential care facility exception.

By definition, an employee who "may be [lawfully] required to work on-duty meal periods" (Wage Order No. 5, subd. (11)(E)) continues to have some duties during the meal period and, thus, does not have either an uninterrupted meal period or the unfettered right to leave the premises. Accordingly, in contrast to unpaid, uninterrupted 30-minute, "off-duty" meal periods, during which employees are free to leave the premises—and

---

[3] The hearing officer did not discuss the multiple requirements of the 24 hour residential care facility exception or the evidence pertaining thereto. Rather, concluding a paid "on-duty" meal period must, like an unpaid "off-duty" meal period, be 30 minutes in length (without further discussion or elaboration), the hearing officer pointed to the testimony of the two employees called by the DLSE that they had only 10 to 15 minutes to eat before turning their full attention to other chores, and on the basis of that testimony concluded the employer had not provided adequate meal periods.

4

which are easily measured by "punching in and punching out"—the adequacy of lawful "on-duty" meal periods is not easily evaluated.[4]

The very nature of the 24 hour residential care facility exception is illustrative. This exception can apply, for example, as discussed above, where "the residential care employees [*sic*] eats with residents during the residents' meals and the employer provides the same meal at no charge to the employee." (Wage Order No. 5, subd. (11)(E)(1)(a).) This envisions, then, communal dining of employee(s) and residents. Given the nature of 24 hour residential care for seniors, it is inevitable that during such communal meals some residents will need assistance, which could range from pouring a glass of water, to helping to cut food, to escorting a resident to and from the bathroom. If these sorts of duties do not unduly impinge on the opportunity of employees to eat a nutritious meal without being rushed over the course of a half hour, it certainly seems the employees will have been afforded adequate lawful "on-duty" meal periods. On the other hand, if

---

[4] The few DLSE opinion letters addressing "on-duty" meal periods also make clear that, by definition, employees will continue to have some duties during such meal periods and whether an "on-duty" meal period is adequate is a highly fact specific inquiry. (E.g., Dept. Industrial Relations, DLSE Opn. Letter No. 1994.09.28 (Sept. 28, 1994) ["Examples of situations where the nature of the work would require an on-duty lunch would be situations where the employee is the only person employed in the establishment and closing the business would work an undue hardship on the employer; or the continuous operation of machinery requiring monitoring is essential to the business of the employer. In both of these cases, however, it would be necessary to establish that the employee has adequate time to eat while on the job."]; see The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (Apr. 2017), § 45.2.5 [describing "On-Duty Meal Period" as follows: "Even if all of the circumstances exist to allow an on-duty meal period, the employee must be provided with the opportunity to eat his or her meal while performing the duties required."]; DLSE Memorandum dated Dec. 23, 1999, p. 8 ["Even though the employee is required to work during the on-duty meal period, the employee must be given the opportunity, while working if necessary, to eat his or her meal. That is what cannot be waived, if the work period exceeds six hours, and if an on-duty meal period has been properly established."].) In fact, the DLSE has not identified, nor has our research disclosed, any regulatory advisement or other publication actually stating lawful "on-duty" meal periods must be 30 minutes in length, let alone, discussing how the adequacy of such meal periods should be assessed.

employees feel pressured to eat meals as quickly as possible and to jump up as soon as they swallow their final bite and turn their full attention to whatever work awaits them, then it would seem the employees have not been afforded adequate "on-duty" meal periods. (See *Brinker, supra*, 53 Cal.4th at p. 1040 [employer may not, by pressuring employees, "undermine" formal policy of adequate breaks].) And what of an unexpected event during communal dining—for example, a resident suffers a choking or medical emergency requiring the immediate and undivided attention of one or more of the employees? How such an event, which may occur only rarely, impacts the overall adequacy of lawful "on-duty" meal periods in a 24 hour residential facility for seniors is a challenging question. It is also one we cannot, and do not, answer here; rather, it is posed to illustrate the complexity of, and extreme factual specificity of, what will constitute an adequate 30-minute "on-duty" meal period in any particular context.[5]

Thus, while the DLSE urged us, at oral argument, to affirm on the ground paid "on-duty" meal periods must be 30 minutes in length and in light of the evidence some employees felt they had to rush through meal periods and return their full attention to

---

[5] There are concomitant record keeping questions. For example, must employees record minutes spent assisting senior residents, for example, in getting a cup of tea, or in cutting their food? This would seem to be unduly burdensome and unreasonable. What about time spent attending to a more unexpected event, like a choking? Again, the point in raising these questions is to underscore that determining the adequacy of lawful half hour "on-duty" meal periods and the sufficiency of records documenting such, is an entirely different, and far more complex, inquiry than that in a case where the general rule applies and employees are entitled to unpaid, uninterrupted 30-minute "off-duty" meal periods during which they are free to leave the premises. It also bears noting that the 24 hour residential care facility exception pertaining to meal periods set forth in Wage Order No. 5, subdivision (11)(E) does *not* include the "start over" language that appears in the rest period provisions that may, under certain circumstances, apply to such facilities under Wage Order No. 5, subdivision (12)(C), and which states "[a]nother rest period shall be authorized and permitted by the employer when an employee is affirmatively required to interrupt his/her break to respond to the needs of residents." (See Lab. Code, § 887, subd. (c) [specifying emergency ambulance employees shall remain on call during meal and rest periods, but if employee receives a communication that requires a response, that meal or rest period "shall not be counted towards the meal and rest periods the employee is entitled to" during his or her shift].)

work as quickly as possible, it also acknowledged that what constitutes an adequate "on-duty" meal period depends on the particular context and the specific facts, and that this case is not one in which we can bring any further illumination to that complex question.

Trial Court:

Sonoma County Superior Court


Trial Judge:

Hon. Rene A. Chouteau


Counsel for Plaintiffs and Appellants:

Marie Trimble Holvick, Gordon Rees Scully Mansukhani, LLP

Sara A. Moore, Gordon Rees Scully Mansukhani, LLP


Counsel for Defendant and Respondent:

David M. Balter, Division of Labor Standards Enforcement

Patricia M. Kelly, Division of Labor Standards Enforcement


*L'Chaim House et al. v. Department of Labor Standards Enforcement*  A152975