Filed 5/21/25 (unmodified opn. attached; second modification)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LA KIMBA BRADSBERY et al., | B322799 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC551835) |
| v. | |
| VICAR OPERATING, INC., | SECOND ORDER MODIFYING OPINION |
| Defendant and Respondent. | (No change in the appellate judgment) |

THE COURT:

It is ordered that the opinion filed herein on April 21, 2025, be modified as follows:

1.    On pages 8 to 9, footnote 3 shall be deleted and the following footnote 3 is inserted in its place:

Wage Order No. 4 applies to all employees "in professional, technical, clerical, mechanical, and similar occupations" (see Cal. Code Regs., tit. 8, § 11040, subd. (1)), while Wage Order No. 5 governs employees in the public housekeeping

industry (Cal. Code Regs., tit. 8, § 11050, subd. (1)).  Both wage orders are substantively identical and apply to "registered veterinary technicians and unregistered animal health technicians" (Cal. Code Regs., tit. 8, §§ 11040, subd. (2)(G)(4), 11050, subd. (2)(G)(4).)  The parties agree one or the other of these wage orders applied to Plaintiffs' employment with Vicar.  We need not determine which applies because the relevant meal period provisions of both wage orders are identical.

This modification does not change the appellate judgment.

_____
MARTINEZ, P. J.         FEUER, J.         STONE, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LA KIMBA BRADSBERY et al., | B322799 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC551835) |
| v. | |
| VICAR OPERATING, INC., | ORDER MODIFYING OPINION |
| Defendant and Respondent. | (No change in the appellate judgment) |

THE COURT:

It is ordered that the opinion filed herein on April 21, 2025, be modified as follows:

2.    On pages 8 to 9, footnote 3 shall be deleted and the following footnote 3 is inserted in its place:

Wage Order No. 4 applies to all employees "in professional, technical, clerical, mechanical, and similar occupations" (see Cal. Code Regs., tit. 8, § 11040, subd. (1)), while Wage

Order No. 5 governs employees in the public housekeeping industry (Cal. Code Regs., tit. 8, § 11050, subd. (1)).

This modification does not change the appellate judgment.

_____
MARTINEZ, P. J.          FEUER, J.          STONE, J.

Filed 4/21/25 (unmodified opn.)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LA KIMBA BRADSBERY et al., | B322799 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC551835) |
| v. | |
| VICAR OPERATING, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed.

Capstone Law, Ryan H. Wu, Melissa Grant and John E. Stobart for Plaintiffs and Appellants.

Mitchell Silberberg & Knupp, Gary M. McLaughlin and Corey G. Singer for Defendant and Respondent.

————————————

# INTRODUCTION

The Legislature and the Industrial Welfare Commission (IWC) have determined a meal period for work shifts between five and six hours may be waived.  The question before us is narrow and of first impression: whether the mutual waiver of that meal period by an employer and employee can occur prospectively and in writing.  Labor Code section 512 guarantees a 30-minute, off-duty meal period for employees after five work hours and a second meal period after 10 work hours.  Section 512 also provides that, for shifts between five and six hours, the first meal period "may be waived by mutual consent of both the employer and employee."[1]  (§ 512, subd. (a).)  The relevant wage orders issued by the IWC similarly provide for meal periods and their waiver.

In 2014, La Kimba Bradsbery and Cheri Brakensiek (collectively, Plaintiffs) sued their former employer, Vicar Operating, Inc. (Vicar), alleging claims on behalf of a class of Vicar employees.  As relevant here, Plaintiffs alleged Vicar failed to provide them with the meal periods required by section 512 and IWC Wage Order Nos. 4-2001 (Wage Order No. 4) and 5-2001 (Wage Order No. 5).  Vicar asserted Plaintiffs signed a valid written agreement that prospectively waived all waivable meal periods throughout Plaintiffs' employment with Vicar.  The agreement provided Plaintiffs could revoke the agreement at any time.  Vicar moved for summary adjudication regarding the validity of this waiver under section 512 and the wage orders.  The trial court determined the waivers were valid and ruled for Vicar.

---

[1]  All undesignated statutory references are to the Labor Code.

2

Plaintiffs aver prospective waivers permit employers to circumvent the statutory meal break requirements and deny employees a meaningful opportunity to exercise their right to meal breaks. The text and legislative and administrative history do not support these arguments. Further, Plaintiffs do not argue the waivers are unconscionable or that they impede or discourage workers from taking meal breaks. Nor do Plaintiffs argue that they unknowingly signed the waivers, that Vicar coerced them into signing the waivers because it had greater bargaining power, or that they could not freely revoke the waivers at any time. While we would hesitate to uphold a prospective written waiver under such circumstances, this case does not present them.

We conclude the revocable, prospective waivers Plaintiffs signed are enforceable in the absence of any evidence the waivers are unconscionable or unduly coercive. The prospective written waiver of a 30-minute meal period for shifts between five and six hours accords with the text and purpose of section 512 and Wage Order Nos. 4 and 5. The legislative and administrative history confirms the Legislature and IWC determined such waivers are consistent with the welfare of employees. We also conclude *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*) does not require a contrary result. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

Plaintiffs filed a putative class action in July 2014, alleging claims on behalf of "[a]ll individuals who worked for [Vicar] in California as a veterinary assistant, veterinary technician, surgery technician, kennel technician, client service

3

representative, or similar position" in the four years before the complaint was filed.  As relevant here, Plaintiffs alleged Vicar violated section 512, subdivision (a), by requiring Plaintiffs and class members to work shifts between five and six hours without a meal period and without "waiv[ing] their legally mandated meal periods by mutual consent."  The complaint alleged Vicar owed Plaintiffs and class members premiums for missed meal periods.

B.      *Stipulated Facts*

Vicar operates a network of veterinary hospitals. Bradsbery worked for Vicar as a veterinary technician from September 2008 to February 2011, and Brakensiek worked for Vicar as a veterinary assistant and veterinary technician from 2004 to August 2011.

In April 2009, Plaintiffs each signed a written meal period waiver with Vicar.  The waiver stated:

> I hereby voluntarily waive my right to a meal break when my shift is 6 hours or less.  I understand that I am entitled to take an unpaid 30-minute meal break within my first five hours of work; however, I am voluntarily waiving that meal break.  I understand that I can revoke this waiver at any time by giving written revocation to my manager.

Brakensiek also signed a second identical meal period waiver in 2011.

4

C.      *Vicar's Motion for Summary Adjudication*

The parties stipulated Vicar could file a motion for summary adjudication under Code of Civil Procedure section 437c, subdivision (t), to determine "whether Vicar's 'blanket' meal period waivers to prospectively waive meal periods on qualifying shifts are enforceable under California law."[2]  The parties also stipulated to the facts stated above.

In its motion, Vicar asserted as an affirmative defense to liability that Plaintiffs validly waived the disputed meal periods. (See *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 75-76 (*Donohue*) [waiver of meal period is an affirmative defense to liability, with burden of proof on the employer].)  Vicar argued the prospective meal period waiver was valid because "neither the Labor Code nor the wage orders specify what form the waiver must take, or when or how it may be obtained."

Plaintiffs opposed, arguing prospective waivers were prohibited under Wage Order Nos. 4 and 5 (together, the "wage orders"), an opinion letter from the Division of Labor Standards Enforcement (DLSE) interpreting an agricultural wage order, and *Brinker*, *supra*, 53 Cal.4th 1004.  Plaintiffs further argued employees could waive a meal period for a given shift only after they were scheduled to work that shift.

The trial court granted Vicar's motion for summary adjudication.  It determined the plain language of section 512 and the wage orders "permit[] prospective 'blanket' waivers."  The

_____

[2]      Code of Civil Procedure section 437c, subdivision (t), provides that "a party may move for summary adjudication of a legal issue . . . that does not completely dispose of a cause of action, affirmative defense, or issue of duty pursuant to this subdivision."

5

court distinguished *Brinker* because it "did not address" "*when* an employer must obtain a meal break waiver," but instead whether an employer must ensure that no work is performed during meal periods. Finally, the court concluded the DLSE letter was "not applicable here" because it interpreted different wage order regulations governing agricultural occupations.

Plaintiffs filed a petition for writ of mandate, which this court denied.

Plaintiffs and Vicar settled the remaining claims. Under the settlement agreement, Plaintiffs agreed to dismiss these claims with prejudice but reserved the right to appeal the court's summary adjudication order. The trial court entered judgment in favor of Vicar, and Plaintiffs timely appealed.

## DISCUSSION

A. *Standard of Review*

A party is entitled to summary adjudication of a cause of action if "no genuine issue of material fact exists" and the party is "entitled to judgment as a matter of law." (*Donohue, supra,* 11 Cal.5th at p. 80; accord, *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 123 (*Doe*); *Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1154 (*Syngenta*).) A defendant moving for summary adjudication "must satisfy the initial burden of production and make a prima facie showing that 'one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action.'" (*Donohue*, at p. 79; accord, *Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77 Cal.App.5th 247, 256; see Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant carries

6

this initial burden, the burden shifts to the plaintiff to show a triable issue of material fact exists.  (See *Donohue*, at p. 79.)

"[A] ruling on a motion for summary adjudication is reviewed de novo."  (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273.)  If there are "no disputed issues of fact" we consider only the legal issues.  (*Drouet v. Superior Court* (2003) 31 Cal.4th 583, 589.)  We review questions of statutory interpretation de novo.  (See *Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 804 (*Niedermeier*); *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)

B.    *Legal Background and Governing Law*
        "In California, 'wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC.'"  (*Donohue*, *supra*, 11 Cal.5th at p. 66.)
        "The [IWC] is the state agency empowered to formulate wage orders governing employment in California."  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4 (*Murphy*).)  The IWC possesses "broad statutory authority" to investigate and regulate "'the comfort, health, safety, and welfare' of the California employees under its aegis."  (*Industrial Welfare Commission v. Superior Court* (1980) 27 Cal.3d 690, 700-701; accord, *Brinker*, *supra*, 53 Cal.4th at p. 1026; see § 1173.)  "[I]n fulfilling its broad statutory mandate, the IWC engages in a quasi-legislative endeavor" (*Industrial Welfare*, at p. 702), including the promulgation of wage orders, "'which are legislative regulations specifying minimum requirements with respect to

7

wages, hours, and working conditions'" (*Donohue, supra*, 11 Cal.5th at p. 66; see § 1182).

To promulgate a wage order, the Labor Code requires the IWC to "determine that wages are inadequate or that the hours and working conditions are prejudicial to the health, morals, or welfare of employees"; select and consult a "wage board" of employer and employee representatives; and hold public hearings on a proposed order. (*California Hotel & Motel Assn. v. Industrial Welfare Commission* (1979) 25 Cal.3d 200, 213; see §§ 1178-1180 [investigation, wage boards], 1181 [hearings], 1182 [wage orders].) The IWC must also "prepare a statement as to the basis upon which an adopted or amended [wage] order is predicated." (§ 1177, subd. (b); accord, *California Hotel*, at p. 213.)

Although "[t]he Legislature defunded the IWC in 2004, . . . its wage orders remain in effect." (*Murphy*, *supra*, 40 Cal.4th at p. 1102, fn. 4; accord, *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902, fn. 2.) "The IWC's wage orders are to be accorded the same dignity as statutes" and have "'independent effect' separate and apart" from the Labor Code. (*Brinker*, *supra*, 53 Cal.4th at p. 1027.) Here, Plaintiffs and Vicar agree section 512 and IWC Wage Order Nos. 4 or 5 apply.[3]

---

[3] Wage Order No. 4 governs employees in the public housekeeping industry (see Cal. Code Regs., tit. 8, § 11050, subd. (1)), while Wage Order No. 5 applies to all employees "in professional, technical, clerical, mechanical, and similar occupations" (Cal. Code Regs., tit. 8, § 11040, subd. (1)). Both wage orders are substantively identical and apply to "registered veterinary technicians and unregistered animal health technicians" (Cal. Code Regs., tit. 8, §§ 11040, subd. (2)(G)(4),

C.    *Section 512 and Wage Order Nos. 4 and 5*

    1.    *Plain Text and Context*

At issue in this case is the meaning of the phrase "waived by mutual consent" of the employer and employee in section 512 and the two wage orders, and whether that meaning prohibits the prospective written waivers Vicar had its employees sign. In those written waivers, employees expressly waived their right to a 30-minute meal period for work shifts between five and six hours.

We begin with the plain text. When engaged in statutory construction, "[w]e look first to the words of the statute, ""because they generally provide the most reliable indicator of legislative intent.' [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose."" (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119 (*Ceja*).) """If the statute's text evinces an unmistakable plain meaning, we need go no further.""" (*First Student Cases* (2018) 5 Cal.5th 1026, 1035; accord, *Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1052 (*Stone*).) """If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.""" (*Stone*, at p. 1052; accord, *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14 (*Skidgel*).)

---

11050, subd. (2)(G)(4).) The parties agree one or the other of these wage orders applied to Plaintiffs' employment with Vicar. We need not determine which applies because the relevant meal period provisions of both wage orders are identical.

"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*Skidgel, supra,* 12 Cal.5th at p. 14; accord, *Stone, supra,* 16 Cal.5th at p. 1052; see Code Civ. Proc., § 1859.) "When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC." (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262 (*Augustus*).) To fulfill "the remedial purposes of the wage and hour laws" (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087), we "liberally construe the Labor Code and wage orders to favor the protection of employees." (*Augustus*, at p. 262; accord, *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840.) "To the extent a wage order and a statute overlap," as here, "we will seek to harmonize them, as we would with any two statutes." (*Brinker*, *supra*, 53 Cal.4th at p. 1027.)

Section 512 provides, in relevant part, as follows:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.[4]

(§ 512, subd. (a).)

---

[4] Section 512 additionally provides for a second meal period and its waiver, but that provision is not at issue here. (See § 512,

10

Similarly, the text of section 11(A) of Wage Order Nos. 4 and 5 both provide, in relevant part, as follows:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.[5]

(Cal. Code Regs., tit. 8, §§ 11040, subd. (11)(A); 11050, subd. (11)(A).)

The text of section 512 and the text of the wage orders are all silent regarding the timing (prospective or as-accrued) and form (written or oral) of a meal period waiver for shifts between five and six hours. The text also does not define "waived" or "waiver." (See § 500 [defining terms]; Cal. Code Regs., tit. 8, §§ 11040, subd. (2) [same], 11050, subd. (2).) Nor have the parties argued any IWC regulation defines these terms. But case law has long defined waiver as "'the intentional relinquishment

---

subd. (a) ["An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."])

[5] Section 11(A) of both wage orders additionally provides for waiver of an "'on duty'" meal period and is addressed below.

11

of a known right after knowledge of the facts.'" (*City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107; accord, *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)  When "a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense." (*In re Friend* (2021) 11 Cal.5th 720, 730; accord, *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 675.)

Plaintiffs concede the plain language of section 512 and the wage orders is "silent as to when the first meal break can be waived."  Plaintiffs' interpretation of the timing of waivers thus lacks a "textual basis in the wage order or statute." (*Brinker*, *supra*, 53 Cal.4th at p. 1038.)  Plaintiffs instead contend that because other wage order provisions expressly authorize prospective written waivers, by negative implication, the IWC did not intend such waivers beyond those circumstances.  "'[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.'" (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725; accord, *People v. Trevino* (2001) 26 Cal.4th 237, 242 ["When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."]; see *Niedermeier*, *supra*, 15 Cal.5th at p. 804 ["'We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context.'"].)

For example, as to health care employees[6] working shifts over eight hours, section 11(D) of Wage Order Nos. 4 and 5 provides such employees "may voluntarily waive their right to one of their two meal periods. In order to be valid, any such waiver must be documented in a written agreement that is voluntarily signed by both the employee and the employer. The employee may revoke the waiver at any time by providing the employer at least one (1) day's written notice." (Cal. Code Regs., tit. 8, §§ 11040, subd. (11)(D); 11050, subd. (11)(D).) Additionally, we observe section 11(A) of the wage orders allows for "on duty" meal breaks: "Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, §§ 11040, subd. (11)(A); 11050, subd. (11)(A).)

The requirement of a written agreement in these provisions imposes specific requirements in the particular circumstances in which they apply. Waivers "must" be made in writing and can apply prospectively to future meal periods, provided the employee

---

[6] The orders define "employees in the health care industry" to include "[l]icensed veterinarians, registered veterinary technicians and unregistered animal health technicians providing patient care." (Cal. Code Regs., tit. 8, §§ 11040, subds. (2)(G), (2)(G)(4); 11050, subds. (2)(G), (2)(G)(4).) Plaintiffs agree they are "employees in the health care industry."

13

may revoke the waiver with proper notice. (See *Gerard v. Orange Coast Memorial Medical Center* (2018) 6 Cal.5th 443, 447, 456 (*Gerard*) [health care employees]; *Brinker*, *supra*, 53 Cal.4th at p. 1039 [on-duty meals].) These requirements are expressed in mandatory language. (See *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307 ["Courts routinely construe . . . words like 'shall' or 'must' as mandatory."]; accord, *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 493.)

The meal period waiver provisions at issue here in section 512 and section 11(A) of the wage orders do not require a written waiver (let alone in mandatory language). Plaintiffs argue the absence of a written waiver requirement for shifts between five and six hours supports an inference prospective waivers are not authorized. Vicar argues that "the unambiguous language of the Labor Code and Wage Orders places no restrictions on the timing of meal waivers, and thus no prohibition on prospective meal waivers." Because the text of section 512 and the text of the wage orders are susceptible to both interpretations, we examine the relevant legislative and administrative history to discern the intent behind the statutory provision and wage orders. (See *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 709 [if "'the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent'"].)

### 2. *Legislative and Administrative History*

Our review of the history and purpose behind section 512 and Wage Order Nos. 4 and 5 indicates these laws do not reflect an intent to prohibit prospective written waivers of meal periods. (See *Ceja*, *supra*, 56 Cal.4th at p. 1119 ["When construing a

14

statute, our objective 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'"]; accord, *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [extrinsic aids to interpretation "includ[e] the ostensible objects to be achieved, [and] the evils to be remedied"].)

### a.    *Former Wage Order Nos. 4 and 5*

We begin with the wage orders, which predate section 512 by several decades.  In 1943 and 1947, the IWC established that an off-duty, half-hour meal period was required for covered employees after five hours of work, unless the total work shift was less than six hours.  (IWC Wage Order No. 4 R, subd. 10 (June 1, 1947); No. 5 NS, subd. 3(d) (June 28, 1943).) Subsequently, the IWC promulgated the first meal period waiver provisions in 1952.  These stated that "when a work period of not more than six (6) hours will complete the day's work, the meal period may be waived."  (IWC Wage Order No. 4-52, subd. 11 (Aug. 1, 1952); No. 5-52, subd. 11 (Aug. 1952).)  The IWC's 1963 orders specified waiver must be "by mutual consent of employer and employee," but like the present wage orders were silent as to the timing and form of the waiver.  (IWC Wage Order No. 4-63, subd. 11 (Aug. 30, 1963); No. 5-63, subd. 11 (Aug. 30, 1963).)  The administrative history does not explain why the IWC made these amendments, but it is reasonable to assume they were to effectuate the IWC's duty to safeguard "the health, safety, and welfare" of employees.  (§ 1173; see *Martinez v. Combs* (2010) 49 Cal.4th 35, 55 [describing legislative charge to IWC to "'investigate [employee] health, safety, and welfare'"].)

The IWC also authorized written prospective waivers of on-duty meals.  In 1976, Wage Order Nos. 4 and 5 each authorized

15

an employer and employee to arrange for on-duty meal periods "by written agreement" if the nature of the work prevented an off-duty meal period. (IWC Wage Order No. 4-76, subd. 11 (Oct. 18, 1976); No. 5-76, subd. 11 (Oct. 18, 1976).) The effect of such a written agreement was, of course, waiver of an employee's right to an off-duty meal break. The IWC explained that although off-duty meal periods could be waived "by mutual consent" under previous wage orders, "the written agreement [requirement] was requested by employee representatives on wage boards, [and] the Commission concluded that such documentation for mutual consent would also serve to protect employers in case of complaint." (IWC Statement as to the Basis for Wage Order No. 4-76 (Apr. 25, 1977) p. 28.) In other words, the IWC instituted the written agreement requirement for waiver of off-duty meal periods as a protective measure benefiting both employees and employers.

The IWC provided a similar justification in 1993, when it authorized in Wage Order Nos. 4 and 5 written prospective waivers for health care employees working a shift longer than eight hours. (See Cal. Code Regs., tit. 8, §§ 11040, subd. 11; 11050, subd. 11, Register 93, No. 32 (Aug. 6, 1993) pages 1302, 1306-1306.1.) The IWC stated the health care industry requested that employees be able to "waive their right to 'any' meal period or meal periods as long as certain protective conditions were met. The vast majority of employees testifying at public hearings supported the IWC's proposal with respect to such a waiver, but only insofar as waiving 'a' meal period or 'one' meal period, not 'any' meal period. Since the waiver of one meal period allows employees freedom of choice combined with the protection of at least one meal period on a long shift," the IWC implemented this

16

waiver provision by requiring a written revocable agreement. (IWC Statement as to the Basis of Amends. to §§ 2, 3, and 11 of IWC Wage Order No. 5-89 (June 29, 1993); see *Gerard*, *supra*, 6 Cal.5th at p. 448.) The IWC intended a written prospective meal period waiver as a "protective condition[]" for employees, and the ability to waive one meal period as promoting employees' "freedom of choice." (IWC Statement as to the Basis of Amends. to §§ 2, 3, and 11 of IWC Wage Order No. 5-89 (June 29, 1993).)

In 1998, the IWC extended the health care employee written waiver provision for eight-hour shifts to all employees covered by Wage Order Nos. 4 and 5.[7] (See *Brinker*, *supra*, 53 Cal.4th at p. 1047.) The IWC explained it "found there may be prejudicial conditions in this order with respect to employees' difficulties in waiving a meal period" and "DLSE data showed no complaints or violations of the IWC regulations with respect to the waiver provisions in place for the health care industry." (IWC Statement as to the Basis for Wage Order No. 4-98 (Jan. 1, 1998); IWC Statement as to the Basis for Wage Order No. 5-98 (Jan. 1, 1998).) "In an effort to extend the same flexibility to other employees," the IWC allowed all employees covered by Wage Order Nos. 4 and 5 "who work shifts in excess of eight total hours in a workday to voluntarily waive their right to a meal

---

[7] The 1998 wage orders read: "Notwithstanding any other provision of this order, employees who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to a meal period. In order to be valid, any such waiver must be documented in a written agreement that is voluntarily signed by both the employee and the employer. The employee may revoke the waiver at any time by providing the employer at least one day's written notice." (IWC Wage Order No. 4-98, subd. 11 (Jan. 1, 1998); No. 5-98, subd. 11 (Jan. 1, 1998).)

17

period as long as certain protective conditions are met," i.e., a written agreement and the right to revoke the waiver with one day's notice.  (IWC Statement as to the Basis for Wage Order No. 4-98 (Jan. 1, 1998); IWC Statement as to the Basis for Wage Order No. 5-98 (Jan. 1, 1998).)

This change allowed employees to waive all but one meal period during shifts over eight hours, with no upper limit on the length of the shift.  The IWC explained that "the waiver of one meal period allows an employee freedom to choose between leaving work one half-hour earlier or taking a second meal period on a long shift."  (IWC Statement as to the Basis for Wage Order No. 4-98 (Jan. 1, 1998); IWC Statement as to the Basis for Wage Order No. 5-98 (Jan. 1, 1998).)  Although these wage orders were later rescinded by the Legislature, as explained below, they are instructive because they demonstrate the IWC had long deemed prospective written waivers as protecting both employees and employers.

> b. *Section 512 and the reissued wage orders*

In 1999, the Legislature passed Assembly Bill No. 60 (the Eight-Hour-Day Restoration and Workplace Flexibility Act), which added section 512 to the Labor Code.  (Stats. 1999, ch. 134, § 1, p. 1820.)  Assembly Bill No. 60 "was passed in response to IWC wage orders that had eliminated overtime for employees working more than eight hours per day."  (*Gerard*, *supra*, 6 Cal.5th at p. 448.)  The legislation repealed Wage Order Nos. 4 and 5, among others, and "required the IWC to review its wage orders and readopt orders conforming to the Legislature's expressed intentions."  (*Brinker*, *supra*, 53 Cal.4th at p. 1045; see Stats. 1999, ch. 134, § 21, p. 1829.)

Section 512 codified the right to a meal period after five work hours, created the right to a second meal period after 10 work hours, and authorized the parties to waive one meal period by mutual agreement. (See § 512, subd. (a).) It also prohibited the waiver of any meal period for shifts over 12 hours. (*Ibid*.) The legislative history of Assembly Bill No. 60 describes the intent to codify the meal period provision from "[e]xisting wage orders of the [IWC]" and to establish a new right to a second meal period after 10 hours of work. (Legis. Counsel's Dig., Assem. Bill No. 60 (1999-2000 Reg. Sess.) 5 Stats. 1999, Summary Dig., p. 62; *Brinker*, *supra*, 53 Cal.4th at p. 1038 [citing committee bill analysis]; see *In re J.W.* (2002) 29 Cal.4th 200, 211 ["a court may consult contemporary legislative committee analyses of that legislation" to determine legislative purpose]; see also *Souvannarath v. Hadden* (2002) 95 Cal.App.4th 1115, 1126, fn. 9 [legislative counsel's digest is "recognized as a primary indication of legislative intent"]; accord, *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 670.)

When the IWC reissued Wage Order Nos. 4 and 5 in 2001 (the current versions), it authorized written waivers of meal periods only for health care employees working longer than eight hours, effectively returning to the pre-1988 status quo. (See *Brinker*, *supra*, 53 Cal.4th at p. 1047; Cal. Code Regs., tit. 8, §§ 11040, subd. (11)(D); 11050, subd. (11)(D).) The IWC commented that "members of the health care industry" including "employee and employer representatives" requested "the right to waive a meal period if an employee works more than a 12-hour shift," which was not authorized under section 512. (IWC Statement as to the Basis (Jan. 1, 2001) p. 19.) The IWC acknowledged "Labor Code § 512 explicitly states that, whenever

19

an employee works for more than twelve hours in a day, the second meal period cannot be waived." (*Ibid.*) But the IWC adopted the health care waiver provision for shifts over 12 hours by exercising its independent regulatory power under section 516 to "amend the orders with respect to . . . meal periods . . . consistent with the health and welfare of th[e] workers."[8] (*Ibid.*) "The IWC received no compelling evidence, and concluded there was no authority at this time, to warrant making any other change in the provisions of this section other than those required by AB 60." (IWC Statement as to the Basis (Jan. 1, 2001) p. 20.) In other words, the IWC made no changes through its wage orders to section 512's unadorned statement that meal periods for shifts between five and six hours "may be waived by mutual consent of both the employer and employee."

> 3. *The Legislature and the IWC Did Not Prohibit*
> *Prospective Written Waivers of Meal Periods for*
> *Employees Working Between Five and Six Hours*

The text of section 512 and the text of the wage orders do not support Plaintiffs' claims. And Plaintiffs do not address the legislative and administrative history. Instead, they assert that "[a]n ongoing, prospective 'blanket' waiver does not provide any

---

[8]    Assembly Bill No. 60 added section 516 to the Labor Code allowing the IWC to "adopt or amend working condition orders with respect to [rest] break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers." (*Gerard, supra*, 6 Cal.5th at p. 449 [italics omitted].) Section 516 was amended in 2000 to "require[] IWC wage orders to be consistent with section 512." (*Id.* at p. 452; see § 516, subd. (a).)

20

protection to the employee and only favors the employer," and allowing such waivers "would eviscerate the robust meal period protections that California has enacted."

Our fundamental task is to ascertain the purpose of section 512 and the wage orders, with an eye to promoting ""the protection and benefit of employees.""" (*McLean v. State of California* (2016) 1 Cal.5th 615, 622; accord, *Stone*, *supra*, 16 Cal.5th at p. 1052; *Brinker*, *supra*, 53 Cal.4th at pp. 1026-1027.) We conclude the text of section 512 and Wage Order Nos. 4 and 5, as well as the legislative and administrative history, indicate the Legislature and IWC did not intend to prohibit prospective written meal period waivers.[9]

The administrative history of the wage orders reflects the IWC has not viewed prospective written waivers as negatively as Plaintiffs suggest. The waiver of off-duty meal periods in a prospective written agreement instituted in 1976 was at the request of employees on wage boards and was seen by the IWC as protecting employees and employers. Similarly, in promulgating the waiver provisions for health care employees working eight-hour shifts in 1993, the IWC characterized the use of waivers as a "protective condition[]" for employers and employees. According to the IWC, the option to waive a meal period promoted "freedom" for employees by giving them the choice of taking a meal period or ending their shift early. What is more, contrary to Plaintiffs' assertion that prospective written waivers necessarily undermine meal period protections, the IWC expressly authorized written waivers to protect employees' right

---

[9]     We do not consider or decide whether section 512 and the wage orders permit the prospective oral waiver of meal periods.

21

to a meal period in particularly vulnerable circumstances, e.g., during work shifts longer than eight hours and in jobs where an employee cannot take an off-duty meal. If a prospective written waiver agreement is appropriate under such circumstances, it is reasonable to infer there was no intent to prohibit such agreements when a shift is between five and six hours, which implicates reduced health and welfare concerns compared to longer shifts.

The legislative history of section 512 further demonstrates the Legislature concurred with the IWC regarding written meal period waivers. Through section 512, the Legislature intended to codify the meal period waiver provisions from existing wage orders, including Wage Order Nos. 4 and 5, thus authorizing (with mutual consent) a shift of less than six hours without a meal period and a shift of less than 12 hours with one meal period. (See § 512, subd. (a).) To be sure, when enacting section 512, the Legislature also rescinded Wage Order Nos. 4 and 5, which had permitted covered employees to waive a meal period by means of a written waiver for shifts over eight hours. But nothing in the text of section 512 or its legislative history suggests the Legislature disapproved the practice of prospective written waivers.

As section 512 demonstrates, the Legislature did not categorically disallow the use of prospective written waivers. Instead, as relevant here, the Legislature's concern centered on protecting employees' right to two meal periods during shifts exceeding 12 hours. Indeed, section 512 created the unwaivable right to a second meal period during shifts over 12 hours. It appears that, when reissuing Wage Order Nos. 4 and 5, the IWC abandoned the broad written waiver option for covered employees

working over eight hours it had instituted in 1998 because this option had authorized waiver of one meal period for shifts over 12 hours.

In short, we believe it is reasonable to infer the Legislature and IWC wanted to be more protective of employees who worked longer shifts and for that reason spelled out in detail what is required to waive a right to a meal break for shifts over eight hours for health care employees and over 12 hours for all other covered employees. But it does not follow that when employees work fewer hours, here between five and six hours, that there was also an intent to prohibit a prospective written waiver.

Plaintiffs argue prospective meal period waivers "violate the remedial purpose of the wage orders." But the legislative and administrative history before us demonstrates a prospective written waiver may promote the protection of employees. "As a rule, a command that . . . a statute be liberally construed 'does not license either enlargement or restriction of its evident meaning'" (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 844) and "does not mean that the Legislature's intent as expressed in the statute can be ignored" (*Ruiz v. Industrial Accident Commission* (1955) 45 Cal.2d 409, 413; cf. *People v. Braden* (2023) 14 Cal.5th 791, 817 [rejecting argument that "only the broadest possible reading of an ameliorative statute can be deemed consistent with the Legislature's purpose in enacting such a statute"]).

Further, the waivers at issue here are revocable by the employees at any time. The DLSE has emphasized employees have the right to revoke a written meal period waiver (or to decline to sign a waiver) without retaliation from their employer.

23

After promulgation of the 2001 wage orders, the DLSE provided guidance on the nature of written meal period waivers to individual employers. (See *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 558-559 [agency advice letters are persuasive on interpretation of regulations]; accord, *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571.)

Addressing the written waiver of off-duty meal periods, the DLSE stated that "in those instances where an employee refuses to sign a VOLUNTARY authorization (or revokes an existing authorization), the IWC orders (and the Labor Code) prohibit the employer from discharging or otherwise discriminating against the employee, and require the employer to pay . . . [a] penalty to the employee for any day in which the worker is required to work an on-duty meal period that is not permitted under the Order." (Cal. Dept. Industrial Relations, DLSE Chief Counsel Miles E. Locker, advice letter, "On-Duty Meal Periods" (Mar. 7, 2001); see § 98.6, subd. (a) ["A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment . . . because of the exercise by the employee or applicant for employment . . . of any rights afforded them."].) This agency guidance suggests a written waiver provision complements the remedial worker protection framework by providing employees the right to refuse to sign and to revoke standing meal period waivers without adverse employment consequences.

As stated, Plaintiffs make no argument the prospective waivers in this case are unconscionable (see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133) or that they have the effect of impeding or discouraging workers from taking the meal

periods to which they are entitled (see *Brinker*, *supra*, 53 Cal.4th at p. 1040). Nor do they argue that they unknowingly signed the waivers, that Vicar coerced them into signing the waivers because it had greater bargaining power, or that they could not freely revoke the waivers at any time. We would have serious reservations regarding the validity of prospective written waivers of meal periods under such circumstances but the present case does not present them, and we need not reach these issues here.

D.     Brinker *Does Not Support Plaintiffs' Arguments*

Plaintiffs rely heavily on their reading of *Brinker*. In their view, *Brinker*, *supra*, 53 Cal.4th 1004, interpreted the same meal period waiver provisions at issue in this case and supports their reading of the statute and wage orders. According to Plaintiffs, *Brinker* decided that "the employer's obligation to provide a meal period must first be triggered by engaging, permitting, or suffering an employee to work more than five hours" and thus an employee may waive a meal break only when he or she "has worked" or "is scheduled to work . . . a shift requiring a meal break."

In *Brinker*, the California Supreme Court considered, as relevant here, "(1) the nature of an employer's duty to provide employees with meal periods; and (2) the timing requirements applicable to the provision of meal periods." (*Brinker*, *supra*, 53 Cal.4th at p. 1034.) The high court held that, under section 512 and Wage Order No. 5, an employer must provide a meal period by "reliev[ing] its employees of all duty, relinquish[ing] control over their activities and permit[ting] them a reasonable opportunity to take an uninterrupted 30-minute break" without "imped[ing] or discourag[ing] them from doing

so." (*Id.* at p. 1040.)  The court further held an employer must "provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work." (*Id.* at p. 1049.)

The employee plaintiffs in *Brinker* argued that, under Wage Order No. 5, their employer was required to "ensure no work is done" during their meal periods.[10]  (*Brinker*, *supra*, 53 Cal.4th at p. 1038.)  In support of this position, the employees "focuse[d] on the phrase 'No employer shall employ any person [without the specified meal period] . . .' [citation], contending that 'employ' includes permitting or suffering one to work, and so the employer is forbidden from permitting an employee to work during a meal break." (*Id.* at p. 1039.)  *Brinker* rejected this interpretation by explaining that "[i]f an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered," and the phrase "'[n]o employer shall employ'" is part of the "trigger for [the meal break] obligation," not a description of the meal period itself.  (*Ibid.*)

To illustrate the employer's duty during meal periods under Wage Order No. 5, *Brinker* further explained:  "What must transpire after the meal break obligation is triggered is covered by later parts of the subdivision relating to waiver, on-duty meal periods . . . , and premium pay.  When someone is suffered or permitted to work—i.e., employed—for five hours, an employer is put to a choice:  it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less

---

[10]    As stated, Wage Order No. 5 provides:  "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." (Cal. Code Regs., tit. 8, § 11050, subd. (11)(A).)

26

will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit." (*Brinker*, *supra*, 53 Cal.4th at p. 1039.)

Here, Plaintiffs argue this passage from *Brinker* is a controlling interpretation of the procedure to waive a meal period by mutual consent under Wage Order No. 5. Plaintiffs overread *Brinker*, especially when considering the legislative and administrative history of section 512 and the wage orders, which reflect the Legislature and IWC authorized prospective waivers of meal periods, even when they had not yet been earned or accrued. Although *Brinker* addressed the nature of the meal period and when the meal period accrued, it did not address the timing or circumstances under which a meal period can be waived. Even if an employee's right to a meal period arises after five hours of work, Plaintiffs do not explain why they cannot prospectively waive it. Further, this passage from *Brinker* does not address the meal period waiver provisions, let alone the scope, form, or timing of any waiver. (See *Ferguson v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613, 1624 ["'[I]t is axiomatic that cases are not authority for propositions not considered.'"]; accord, *Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1005-1006.)

Plaintiffs also rely on another passage from *Brinker* about the waiver of employee rest periods required by Wage Order No. 5. In addition to meal periods, *Brinker* also considered the scope of an employer's duty to provide rest periods. (See *Brinker*, *supra*, 53 Cal.4th at p. 1028.) The employer defendant had adopted a uniform rest break policy allegedly violating the requirements of Wage Order No. 5. (See *id.* at p. 1033.) The court held class certification was proper on the plaintiffs' claim

for rest break violations.  (See *ibid.*)  In so holding, *Brinker* observed that, although the parties agreed "rest breaks can be waived," "[n]o issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it." (*Ibid.*)  Plaintiffs contend this observation supports their position a meal break can only be waived after it has accrued.  But the rest period requirements in Wage Order Nos. 4 and 5 are contained in separate provisions from and expressed in different language than the meal period requirements and accompanying waiver provisions.  (Compare Cal. Code Regs., tit. 8, §§ 11040, subd. (11)(A); 11050, subd. (11)(A), with §§ 11040, subd. (12)(A); 11050, subd. (12)(A).)  And, as with meal periods, *Brinker* did not address the requirements for the waiver of rest breaks.  (See *Brinker*, at p. 1033.)  For these reasons, we do not find Plaintiffs' reading of this passage from *Brinker* persuasive.

E.     *The 2003 DLSE Opinion Letter Does Not Apply*

Finally, Plaintiffs contend our interpretation of Wage Order Nos. 4 and 5 must be guided by DLSE's opinion letter dated August 13, 2003, addressing "Meal Periods Under IWC Order No. 14-2001."  Wage Order No. 14-2001 (Wage Order No. 14) applies to "all persons employed in an agricultural occupation."  (Cal. Code Regs., tit. 8, § 11140, subd. (1).)  The DLSE opinion letter states, "As a statutorily protected right, the decision to forego a meal period must be made personally by each worker on a daily basis. . . .  Therefore, blanket 'waivers' of meal periods . . . whether written or oral, will not be considered valid." (Dept. Industrial Relations, DLSE Opn. Letter No. 2003.08.13 (Aug. 13, 2003) pp. 2–3.)

"As the state agency empowered to enforce wage orders and state labor statutes, the DLSE is in a position to accumulate both knowledge and experience relevant to the administration of wage orders." (*Augustus*, *supra*, 2 Cal.5th at p. 267.) While "we generally give DLSE opinion letters 'consideration and respect,' it is ultimately the judiciary's role to construe the language" of wage orders. (*Harris v. Superior Court* (2011) 53 Cal.4th 170, 190; accord, *Augustus*, at p. 267 [DLSE opinion letters are "not controlling"].)

The opinion letter cited by Plaintiffs does not carry interpretive weight for Wage Order Nos. 4 and 5. As the opinion letter itself explains, at the time it was issued, the meal period provision in Wage Order No. 14 differed from that of section 512 and "all of the other wage orders." (Dept. Industrial Relations, DLSE Opn. Letter No. 2003.08.13 (Aug. 13, 2003), p. 2.) In 2003, Wage Order No. 14 required employers merely to "authorize and permit" a meal period, but today, the meal period provision aligns with the language used in the other wage orders. (See *ibid.*; Cal. Code Regs., tit. 8, § 11140, subd. (11)(D).) Because the opinion letter interprets a standard different from Wage Order Nos. 4 and 5 that is no longer in effect (and one applying to a different industry), we conclude the letter's interpretation is not controlling.

In sum, Plaintiffs have not demonstrated Vicar's use of prospective written waivers violates the Labor Code or the applicable wage orders at issue in this case.

## DISPOSITION

The judgment is affirmed.  Vicar is entitled to recover its costs on appeal.


MARTINEZ, P. J.

We concur:



FEUER, J.



STONE, J.